No. 8901.

## DUKE ET AL. *v.* BEESON.

REDEMPTION.—*Execution.*—*Liens.*—*Statute Construed.*—The law concerning the priority of liens, as it existed before the act of 1879, providing for the redemption of real estate from sheriff's sales (Acts 1879, p. 176), was, not changed by that act.

SAME.—*Sheriff's Sales.*—*Application of Proceeds.*—The requirement of section 5 of the act of 1879, that upon a sheriff's sale, on behalf of a redemptioner,. the proceeds shall be first applied to pay " the amount due for redemption," must be construed in connection with, and be controlled by, section 3 of said act, which positively preserves the priority of liens, so that though a second redemptioner must pay not only the redemption money paid by the first, with interest and costs, but also the debt, interest and. costs, by virtue of which the latter was enabled to redeem, yet no priority for the latter sum would accrue over any older lien held by a creditor who had not redeemed, and the second redemptioner could not demand that the proceeds of his sale should be applied thereto in preference to such older lien.

SAME.—*Mandate.*—*Mortgage and Judgment Liens.*—A mortgage, being the oldest lien, was foreclosed, and the real estate sold, leaving a portion of the judgment unsatisfied. A., the holder of a judgment lien next in priority, redeemed, and from him B., a holder of a junior judgment lien, who paid the redemption money, interest and costs paid by A., and also. the amount of A.'s judgment. B. then sued out an execution on his judgment, with the proper recital of the several redemptions. The sheriff, holding also an execution for the balance of the mortgage debt, sold in regular form upon B.'s execution, and the holder of the mortgage-

Duke *et al. v.* Beeson.

debt became the purchaser; he tendered to the sheriff, in cash, the amount of the original redemption money with interest and costs, which had been paid by B. on account of the first sale, and, for the residue of his bid, tendered his receipt to apply on his execution in the sheriff's hands, it being the oldest lien. The sheriff refused the receipt, as also to execute a deed or certificate of purchase to him.

*Held,* that a *mandate* should go against the sheriff, to compel him.

SHERIFF.—*Execution.*—*Application of Proceeds of Sale of Real Estate.*—When a sheriff holds several executions against the same party, issued upon judgments which are liens on real estate, the proceeds of sale of such real estate on any of such writs should be applied to the satisfaction of all, in the order of the priority of the liens.

From the Howard Circuit Court.

*C. N. Pollard, J. F. Elliott* and *L. J. Kirkpatrick,* for appellants.

*R. Vaile* and *J. F. Vaile,* for appellee.

HOWK, J.—This suit was commenced by the appellee against the appellant to compel him, as the sheriff of Howard county, by mandate, to perform certain alleged official duties, which, the appellee averred, he had refused to perform. The appellant Duke filed his demurrer to the appellee's complaint for such mandate, upon the ground that it did not state facts sufficient to constitute a cause of action. Before any action was had on this demurrer, on the verified petition of Moses Rosenthal, Charles J. Kraus and Joseph Rosenthal, partners under the firm name of Rosenthal, Kraus & Co., they were admitted as defendants in appellee's action. Thereupon they also demurred to appellee's complaint, for the alleged insufficiency of the facts therein to constitute a cause of action. Before the court ruled upon either of the demurrers to the complaint, all the appellants filed what is called their cross complaint against the appellee. Thereafter the appellants' demurrers to appellee's complaint were overruled by the court, and to these rulings they excepted. The appellee then demurred to appellants' so called cross complaint for the want of sufficient facts therein, as alleged, to constitute a cause of action, which demurrer was sustained by the court, and to this decision the

appellants excepted. They declined to amend their cross complaint or to plead further; and thereupon the court rendered judgment against them, for the appellee, for a peremptory mandate, as prayed for in his complaint.

From this judgment the appellants, the defendants below, have appealed to this court and have here assigned, as errors, the following decisions of the circuit court:

1. In overruling their demurrers to appellee's complaint; and

2. In sustaining appellee's demurrer to their cross complaint.

In his complaint the appellee alleged in substance, that, at the March term, 1879, of the Howard Circuit Court, Sarah Markland and others, by the consideration of said court, recovered a decree for the foreclosure of a certain mortgage executed by one Nathaniel J. Owings on certain real estate, particularly described, in Howard county; that afterward a copy of said decree was duly issued to the appellant Duke, as the sheriff of said county; that, by virtue of said writ, the said Duke, as such sheriff, after due advertisement, on April 7th, 1879, offered and sold the said real estate, at public auction, to one Amos A. Covalt, for the sum of $2,205.95, that being the highest and best bid made therefor; that such sale satisfied so much of said mortgage debt as was then due and the costs then accrued, but that a large part of the mortgage debt, to wit, more than $2,600 thereof, which was not then due, remained unsatisfied after said sale; that afterward, on August 23d, 1879, the said Sarah Markland and others assigned and transferred to the appellee, Beeson, all the instalments of said mortgage and decree thereafter to become due, which remained unsatisfied after the said sale, stating the amount of each instalment and the time it would become due; that each and all of the said instalments were a lien on said real estate from the date of said mortgage, to wit, October 1st, 1875, and were the first and oldest lien on said real estate, subject only to the certificate of sale issued by the sheriff, under said

writ, to said Covalt; that afterward, on February 5th, 1880, one James F. Elliott, as assignee of Walker, Welsh & Co., then and there a junior judgment creditor of said Nathaniel J. Owings, having two judgments against said Owings which became liens on said real estate on October 3d, 1877, but junior to the said liens of the appellee, redeemed said real estate from the said sheriff's sale thereof, on April 7th, 1879, by paying to the clerk of said court, for the use of the purchaser at said sale, the sum of $2,394.22, the principal and interest of the purchase-money; that afterward, on February 19th, 1880, the appellants Rosenthal, Kraus & Co., to obtain the benefit of the redemption so made by said Elliott, paid to the clerk for the use of said Elliott the said sum of $2,394.22 and its accrued interest, and also the amount of Elliott's said judgments, making in all $3,797 by them paid to obtain the benefit of said redemption; that the said Rosenthal, Kraus & Co. were then and there judgment creditors of said Owings, their lien bearing date October 4th, 1877, and being junior not only to appellee's claims, but also to the judgments of said Elliott, as assignee.

And the appellee averred, that afterward the said Rosenthal, Kraus & Co. sued out an execution on their judgment for the amount thereof, the execution further reciting the several amounts paid for redemption and for obtaining the benefit of such redemption, as above stated; that, by virtue of such execution, the appellant Duke, as such sheriff, duly advertised that he would sell said real estate, at public auction, on the 10th day of April, 1880; that, prior to and at the time of such sale, the appellee had in the hands of said sheriff a certified copy of the decree of foreclosure of said mortgage; that on said 10th day of April, 1880, the said Duke, as such sheriff, offered and sold the said real estate, at public auction, to the appellee, Beeson, for the sum of $4,000, that being the highest and best bid made therefor; that, in payment of his said bid, the appellee then and there tendered to the appellant Duke, as such sheriff, the sum of $2,650 in legal tender

notes of the United States, that being the full amount of the original redemption money for said real estate, together with all accrued interest and costs, and including all claims then in said sheriff's hands, that were senior to or equal with the lien of the appellee's claims; and appellee further offered to receipt to said sheriff, on his said writ, for the sum of $1,359.-65, and then and there tendered to said sheriff such receipt in payment of the residue of his bid of $4,000, to be applied on the appellee's writ then in said sheriff's hands, and then and there the oldest lien on said real estate, and demanded a deed for said real estate. But the appellee averred that the appellant Duke, as such sheriff, wrongfully refused to execute to appellee a certificate of.sale or deed for said real estate, as by law required.

Wherefore the appellee asked that a mandate be issued against said sheriff commanding him on the payment of said $2,650, and the receipting for such sum of $1,359.65, to execute to appellee a conveyance of such real estate, in manner and form as required by law, and for other proper relief.

It is manifest, we think, from the allegations of appellee's complaint, that the question of its sufficiency depends for its proper decision upon the construction which must be given to the provisions of an act, approved March 31st, 1879, entitled " An act providing for the redemption of real property or any interest therein sold on execution or decree of sale, and providing for deeds of conveyance in such cases." Acts of 1879, p. 176. This act contained an emergency clause or section, and, therefore, it took effect and became a law from and after the date of its approval. It was the law of this State at the time of the first sale of the real estate of Nathaniel J. Owings, as alleged in appellee's complaint, and it remained in full force during all the proceedings stated in the complaint, and until the redemption act of April 11th, 1881, took effect, on the 19th day of September, 1881. In section 13 of this latter act (section 778, R. S. 1881), it is expressly declared that " The provisions of this act shall not apply to

any sale on execution or decretal order made before the taking effect of this act; but all liens and rights of redemption and re-sale, existing at the passage of this act and growing out of any such sale, may be enforced in like manner as if this act had not been passed, and in accordance with the statute in force when such sale was made."

It follows, therefore, that, in determining the question of the sufficiency of the appellee's complaint in the case at bar, we must be governed by the provisions of the above entitled act of March 31st, 1879, and of the prior legislation of this State on the subject of said act, in no manner repealed thereby. There is no repealing clause or section in the act of March 31st, 1879, and if it repeals any prior legislation on the subject of the act, it is not an express repeal, but wholly a repeal by implication. Under the provisions of the redemption act of June 4th, 1861, substantially the same question as the one presented by appellee's complaint, in the case now before us, was considered and decided by this court in a number of cases. Thus, in *The State, ex rel. Allen,* v. *Sherill,* 34 Ind. 57, it was held in substance, that where land sold on execution for less than the amount of the judgment on which the execution was issued is redeemed by the judgment defendant, the priority of the lien of such judgment for the residue thereof, over other judgment liens, would continue as if such sale had not been made. In *Greene* v. *Doane,* 57 Ind. 186, where land had been sold under a judgment for the foreclosure of a mortgage, and at such sale a third person had become the purchaser for a part only of such judgment, leaving a balance due thereon, it was held that such judgment creditor might redeem the land from such sale thereof. In *Cauthorn* v. *The Indianapolis, etc., Railroad Co.,* 58 Ind. 14, it appeared that certain real estate, sold at sheriff's sale in part satisfaction of a judgment foreclosing a prior mortgage, leaving a balance due thereon, had been redeemed from such sale by a purchaser thereof at a sheriff's sale under a junior judgment, and it was held that such real estate might be sold to satisfy

the unpaid balance of the mortgage judgment, notwithstanding the fact that, at the time of the last sale, the judgment debtor had other property subject to execution.

The question under consideration was before this court also in the later cases of *Teal* v. *Hinchman,* 69 Ind. 379, and of *Smith* v. *Moore,* 73 Ind. 388. In both of these cases, there had been sales under judgments of foreclosure of the mortgaged premises, for sums much less than the mortgage judgments; and from these sales thereof the premises had been redeemed, in both cases, under the redemption act of June 4th, 1861. In each of the cases, the point was made and pressed with much earnestness, that, by reason of the sheriff's sale of the mortgaged premises, under the judgment of foreclosure, the mortgage and the judgment thereon became *functus officio* as to the mortgaged property, and that the same was thereby discharged from, and divested of, the lien of the mortgage and of the judgment of foreclosure, notwithstanding the redemption of the property from such sale thereof. In considering the point thus made, in the cases cited, this court said: " The effect of such redemption was to vacate and set aside the said sheriff's, sale of the mortgaged property, and thereafter both the mortgage and the judgment of foreclosure stood precisely as they would have done, so far as the property was concerned, if no sale thereof by the sheriff had ever been made. * * * In such a case, the mortgaged property will remain a security for the unpaid balance of the mortgage debt and costs, and the judgment creditor may enforce the collection thereof by suing out an *alias* order of sale on his judgment of foreclosure, and by causing a resale by the sheriff of the mortgaged premises, as often as there may be a redemption of and from the previous sale thereof, in the mode, and within the time,. prescribed by law for such redemption, and until the mortgage debt, interest and costs have been fully paid and satisfied." *Smith* v. *Moore, supra,* on page 395.

Thus the law was construed and declared by this court, upon the subject now under consideration, prior to the taking

effect of the above entitled act of March 31st, 1879. The question remains, and this is the question for decision in the case now before us, Do the provisions of the act of March 31st, 1879, "change in any manner the priority of liens obtained or held by any of the creditors," as such priority existed under the law in force at or before the taking effect of said act? We are of the opinion that the pre-existing priorities of liens are expressly saved and preserved by the provisions of the act now under consideration. The lien of a judgment upon the lands of the judgment debtor is, without doubt, the creature of the statute, and is not dependent in any manner upon the contract of the parties. It begins, continues and terminates at the will of the Legislature. *Gimbel* v. *Stolte*, 59 Ind. 446; *Houston* v. *Houston*, 67 Ind. 276. This being conceded, as we think it must be, it follows of necessity that the priorities and other incidents of judgment liens are proper subjects of legislation, and may be modified, changed, or entirely taken away, at the will of the law-making power. But the question for decision in this case is not what might have been done, but what, if anything, actually was done in changing the priorities of judgment liens, by the above entitled act of March 31st, 1879?

Section 1 of this act merely prescribes and declares the respective rights and liabilities of the purchaser of land at sheriff's sale, and of the owner of the land prior to such sale, or of the occupant of the land during the year allowed by the act for redemption from such sale.

Section 2 of the act provides for the redemption of land, sold at sheriff's sale, "by the judgment defendant, or by his executor or administrator * * * or by any person who has the title of the judgment defendant," and prescribes the time, mode and terms for making such redemption.

Section 3 of the act reads as follows: "Before any of the persons named in the second section of this act shall have redeemed, any judgment creditor having a lien, or a mortgagee, whose mortgage, at the time of his redemption, shall have

Duke *et al. v.* Beeson.

been recorded, may redeem the property sold by paying to the clerk, for the use of the purchaser, his purchase-money, with ten per cent. interest; or, if any such creditor shall have redeemed, then by paying to the clerk, for the use of the last redemptioner, his redemption money with interest as aforesaid, and the costs of the redemption, and also the debt, interest and costs on account of which the prior redemption shall have been made. When there are several creditors or mortgagees entitled to redeem, the creditor having the senior lien, subsequent to the one for which the sale was made, shall have the preference to redeem during the first thirty days after the sale, and the other judgment creditors or mortgagees shall each have preference to redeem during a like time, in the order of seniority of their respective liens. In case of equal liens, the one first redeeming shall have the preference. If none of them redeem within the thirty days herein allowed to each, then all of them shall be deemed to be equal as to the right of redemption, but nothing herein contained shall be construed to change in any manner the priority of liens obtained or held by any of the creditors; and any of them may redeem, and successive redemptions may be made, one from another, as aforesaid; but no redemption shall in any case, under the provisions of this act, be allowed after the expiration of twelve (12) months from the sale. In all cases of redemption, the clerk shall issue to the person redeeming a certificate thereof."

Section 4 of the act has no bearing upon any question in this case.

Section 5 provides as follows: " When the judgment creditor shall have redeemed the property sold, he may sue out an execution on his judgment, and shall direct the clerk to and the clerk shall recite in the execution, in addition to the recitals now required, the judgment on which the sale shall have been made, the sale aforesaid, the redemption or redemptions, the several amounts paid on redemption, and the dates thereof. The sheriff or other officer executing such writ shall proceed first to levy on and sell the property redeemed as he proceeds

in other cases, and the person suing out such writ shall, at the sale under the same, be considered as a bidder for his redemption money, with ten per cent. interest thereon, and all costs accrued since the redemption, and if neither he nor any other person bid more, he shall be deemed the purchaser for that sum, and from the proceeds of sale shall be first paid the amount due for redemption. * * * The title acquired under such sale shall take effect as if there had been no redemption, and if there be no redemption from the sale under such writ, the conveyance made in pursuance thereof shall have effect as if it had been made in pursuance of the first sale : *Provided,* That any person hereby entitled to redeem, may redeem from such sale as herein provided, but only within twelve (12) months from the first sale."

The other sections of the act have no reference to, nor bearing upon, the questions for decision in the case now before us, and therefore we need not set them out, or even state their substance.

It must be confessed, we think, that the provisions of the act do not define very clearly the relative rights of the second or subsequent redemptioner, as the statute calls him, of land sold at sheriff's sale, and of the holder of a prior lien thereon, in the proceeds of the sale of such land, by virtue of the execution sued out by such second or subsequent redemptioner. It will be seen, by applying the provisions of section 3, above quoted, to the case stated in appellee's complaint in the case at bar, that after James F. Elliott redeemed the Owings' land from the first sale thereof by the sheriff, the appellants Rosenthal, Kraus & Co., as junior judgment creditors of Owings, for the purpose of redeeming the land from Elliott, were required to pay the clerk, for Elliott's use, not only his redemption money, with ten per cent. interest thereon, and the costs of the redemption, but also the amount of the Elliott judgments, interest and costs, to wit, the sum of $1,402.78, on account of which Elliott had first redeemed the land. After

their redemption of the land from Elliott's redemption thereof, as provided in said section 3, the appellants Rosenthal, Kraus & Co., sued out an execution on their judgment against Owings, in which execution the clerk recited, in addition to the ordinary recitals therein, " the several amounts paid on redemption, and the dates thereof," as required by section 5, above quoted, of the above entitled act. Under and by virtue of this execution, the appellant Duke, as sheriff, advertised and sold the redeemed land, on April 10th, 1880, to the appellee for the sum of $4,000, that being the highest and best bid made therefor. Before and at the time of this sale, the appellant Duke, as such sheriff, had in his hands for collection an *alias* execution or order of sale, issued on the judgment or decree rendered by the court below, at its March term, 1879, against the said Nathaniel J. Owings, and in favor of Sarah Markland and others, and by them assigned to the appellee. This judgment or decree was rendered about six months prior to the rendition of the judgments in favor of the redemptioners, and was, therefore, by law the older lien on the Owings land. Besides this, the judgment or decree was rendered upon a mortgage dated October 1st, 1875, the lien of which, therefore, by contract, antedated the lien of the judgments of the redemptioners more than four years.

It was expressly provided, in section 5, above quoted, of the statute, that, under an execution issued in pursuance thereof, " from the proceeds of sale shall be first paid the amount due for redemption." But this provision of the statute, as it seems to us, must be construed in connection with, and is controlled by, the positive declaration in the 3d section of the act, that " nothing herein contained shall be construed to change in any manner the priority of liens obtained or held by any of the creditors." Thus construed, it is very clear that the lien of the appellee's writ, issued for the unpaid balance of the judgment or decree assigned to him by Sarah Markland and others, came next in priority after the lien of the

Duke *et al. v.* Beeson.

original redemption money, paid by Elliott in redemption of the land from the sheriff's sale thereof to Amos A. Covalt, with ten per cent. interest thereon, and before the lien of the money paid by the appellants Rosenthal, Kraus & Co., on account of the two judgments held by Elliott against Owings, with interest and costs, in redemption of the land from Elliott's redemption. Such being the priority of these several liens, and the act of March 31st, 1879, having made no change in their priority, we are of the opinion that it became and was the duty of the appellant Duke, as such sheriff, to apply the proceeds of the sale of the land to appellee on these several liens, in the order of their priority, as demanded by appellee in his complaint. In *Steele* v. *Hanna,* 8 Blackf. 326, this court said : " The purchase-money for the sale on execution by the sheriff, of lands thus subject to judgment liens when executions are in his hands upon all of them, should be applied to the satisfaction of those liens in the order of their priority; and this, whether the sale be nominally on the execution on the older, or on the executions on all of said judgments." Again, in *The State, ex rel.,* v. *Salyers,* 19 Ind. 432, the court said : " Each of the judgments became a lien upon the real estate of the defendants therein, from the date of the rendition thereof; and there is no doubt that the money made on the sales should have been applied on the several judgments, in the order of their seniority ; paying the oldest judgment first, and so on until the moneys were exhausted. *Steele* v. *Hanna,* 8 Blackf. 326. *Harrison* v. *Stipp, id.* 455. *McMahon* v. *Thompson,* 2 Ind. 114. *Peck* v. *Tiffany,* 2 Comst. 451. The executions were all in the hands of the sheriff at the time of the sale, and it was wholly immaterial upon whose execution the sales were made, the money should have been applied as above indicated. *Rogers* v. *Edmunds,* 6 N. H. 70." See, also, on this point, the cases of *West* v. *Shryer,* 29 Ind. 624, and of *The State, ex rel. Sage,* v. *Prime,* 54 Ind. 450.

It was the duty of the appellant Duke, as such sheriff, upon

such payment and application as aforesaid of the proceeds of the sale to appellee, under the provisions of section 5, above quoted, as, at the time of such sale, more than "twelve months from the first sale" had elapsed, to have executed a conveyance of the land to the appellee. It was alleged in the complaint, that the appellant Duke had refused to perform his official duties, as such sheriff, under the law, both in refusing to make the proper application of the proceeds of the sale, and in refusing to execute to the appellee a conveyance of the land, upon his reasonable request. In such a case the appellee's proper remedy was an application for a mandate to compel the appellant Duke to perform his official duties in the premises. *Jessup* v. *Carey,* 61 Ind. 584. The appellee's complaint was sufficient in substance to withstand the appellants' demurrers thereto for the want of facts; and no objection was made below, nor has any been made in this court, to the informality of the complaint or of the proceedings had thereon.

There is no material difference between the facts of this case, as stated in appellee's complaint, and the facts alleged by the appellants in their cross complaint. The only difference between the complaint and cross complaint, besides the different phraseology in which the same facts are stated, lies in their respective prayers for relief. As we have reached the conclusion that the appellee's complaint stated facts sufficient to constitute a cause of action, in his behalf, entitling him to the relief he demanded, we must hold of necessity that the appellants' cross complaint did not state a cause of action in their favor, and that the appellee's demurrer thereto was correctly sustained.

We have found no error in the record of this cause which would authorize or justify the reversal of the judgment below.

The judgment is affirmed, at the appellants' costs.