Horn *et al. v.* The Indianapolis National Bank.

Filed Oct. 14, 1890.

No. 13,931.

## Horn et al. v. The Indianapolis National Bank.

PRACTICE.—*Notice by Publication.—Sufficiency of.*—Sufficient notice by publication is made where it appears that three full weeks of publication expired more than thirty days before the first day of the term at which the non-resident was notified to appear.

SAME.—*Nunc Pro Tunc Entry.—When May be Made.*—At any time before final judgment is entered the court may properly make a *nunc pro tunc* entry of the order for publication.

MORTGAGE.—*Redemption.—Equitable Tender.—When Not Required.*—While the general rule is that the plaintiff in an equitable proceeding to redeem real property must make an equitable tender of the amount due the senior lien-holder, where the senior lien-holder has money in his hands which it is his duty to apply to the payment of his lien, and which exceeds the amount of his claim, such tender is not required.

SAME.—*Mortgagee in Possession. — Permanent Improvements. — Repairs.*—A mortgagee in possession can not embarrass the right to redeem by making improvements. He may make repairs, but he can not make improvements at the expense of the redemptioners.

SAME.—*Foreclosure.—Decree.—Non-Adjudication of Character of Property.— Rights of Mortgagees.*—A firm engaged in manufacturing barrel headings executed a chattel mortgage on the partnership property, consisting of a heading factory and equipments, situated on the land of the firm, which was held by one of the partners, as trustee. The mortgage provided that the mortgagors might remove the factory to land of the firm situated at Sheridan, Ind. After the removal a second mortgage was executed, both upon the land and heading factory and equipments, subject, as recited therein, to the prior mortgage. Subsequently, to secure the first mortgagee's claim, a conveyance, by agreement a mortgage, was made to him of all the property. Thereafter an agreement was entered into by the interested parties, fixing the priority of liens, provid-

ing for the operation of the factory by one of the creditors and for the application of the property to the debts. Shortly after this agreement a mortgage was executed to the plaintiff, who entered into a similar agreement with the interested parties to that mentioned. ·

*Held,* that as the factory and its equipments were originally personal property, and so characterized in the first mortgage, and so treated in the subsequent agreement and transactions, it retained that character, unless transformed into real property by the decree in the foreclosure suit.

*Held,* also, that the decree in the foreclosure suit brought by the first two mortgagees, which fixed the priority of liens, barred the equity of redemption, and directed that the property should be sold, but which did not adjudicate upon the character of the property, was not conclusive upon the parties, and that the senior lien-holders are not estopped to treat it as personalty.

SAME.—*Invalid Sale.—Remedy of Junior Mortgagee.*—If the sale by the sheriff on such decree of the mill and equipments as personal property was invalid by reason of the property being, in fact, real property, the lien-holder's remedy was by an attack upon the sale itself, and not by a suit to redeem.

SHERIFF'S SALE.—*Judgment Creditor.—May Not Redeem from His Own Sale*—A judgment creditor is not entitled, under the statute, to redeem from a sale made to satisfy a judgment entered in his own favor as well as in favor of the other lien-holders.

SAME.—*Redemption.—Pleading.*—A complaint proceeding on the theory that it shows a right to redeem from a sale made by a sheriff can not be good against the officer by whom the sale was made, even if it be conceded that he did not make a true return.

From the Hamilton Circuit Court.

*T. J. Kane* and *T. P. Davis,* for appellants.

*L. Wallace, Jr.,* and *R. Graham,* for appellee.

ELLIOTT, J.—It is alleged in the complaint of the appellee that in suits brought by Benjamin F. Horn and James R. Carson against Eber Teter and George Teter, the appellee recovered judgment for $5,080, and that a decree was entered foreclosing a mortgage executed by the Teters to the appellee on four acres of land, with its appurtenances; that on the land was a barrel-heading factory, comprising buildings, engines and machinery. It is also alleged that Horn recovered a judgment for $10,000, and obtained a decree of

foreclosure; that a copy of this decree was issued to the sheriff, who advertised the property for sale; that he sold the property to Horn for $2,000, which was less than one-fifth of its value, and that the sheriff subsequently made a return, wherein he stated that Horn purchased the land and buildings without the heading factory or appurtenances, whereas he did, in fact, purchase the land with its appurtenances. It is further alleged that the appellee gave notice at the time of the sale that it would contest the right of any one to hold the property purchased at the sale as personalty; that the Teters are insolvent, and that appellee's judgment can only be collected from the property sold to Horn; that Horn threatens to remove the property from the State, and will remove it unless enjoined; that he has been in possession of the property since 1885, and that the rental value of the property was from $2,000 to $4,000 per annum; that he has given no credit for rent, and that he has removed from the State and converted to his own use property of the value of $12,000.

Horn entered a special appearance and moved to quash the notice given him by publication as a non-resident. The contention that the notice was not published for the time required must fail. The proof of publication shows that three full weeks of publication expired more than thirty days before the first day of the term at which he was notified to appear, and this was sufficient, as more than fifty-one days elapsed between the first publication and the first day of the term. *Hill* v. *Pressley*, 96 Ind. 447.

It was proper to make a *nunc pro tunc* entry of the order for publication. No final judgment had been entered at the time the motion to quash was interposed, so that the case was still pending when the order was entered. The proceedings were, therefore, *in fieri* at the time the *nunc pro tunc* entry was made, and hence it was clearly within the power of the court to make its record speak the truth. The rule which applies in cases where the action has been fully ter-

minated by a final judgment is not relevant to such a case as this.

. The complaint is in the nature of a bill to redeem real property, and the general rule in such cases is, that the plaintiff must make an equitable tender of the amount due the senior lien-holder. *Nesbit* v. *Hanway*, 87 Ind. 400 ; *Kemp* v. *Mitchell*, 36 Ind. 249. But while the general rule is that an equitable tender must be made by offering to pay what may be found due upon an accounting, yet there are exceptions to that rule. One of these exceptions exists where it appears that the lien-holder has money in his hands exceeding the amount of his lien which he is equitably bound to apply to the discharge of his claim. 2 Jones Mort., section 1096. The principle which underlies the rule requiring an equitable tender is, " that he who asks equity must do equity." This is the reason for the rule, and where the reasons fails so, also, does the rule itself. Beyond doubt the reason fails where the senior lien-holder has money in his hands which it is his duty to apply to the payment of his lien, and which exceeds the amount of his claim. As the complaint in this case shows that the senior lien-holder had money in his hands which it was his duty to apply to the payment of his lien the case falls not within the general rule, for that fails, but falls within the exception. We must, therefore, hold that, as the allegations of the complaint are confessed by the demurrer, the failure to make an equitable tender is excused by the facts pleaded. In asserting this conclusion we do not inquire whether Horn was chargeable with the rents received by him for leaving the amount of the rent out of consideration, it still appears that he had twelve thousand dollars in his hands; hence, we need not, and we do not, examine the question of the relevancy of the doctrine declared in the cases of *Gavin* v. *Graydon*, 41 Ind. 559 ; *Elwood* v. *Beymer*, 100 Ind. 504.

We do not, at this point, decide whether the appellee has

any right to redeem, but pass that question, for the reason that it is fully presented in the special finding.

We are unable to discover any theory upon which it can be held that a cause of action is stated against Hawkins. He was, it is true, the sheriff who made the sale; but as the complaint seeks to redeem it affirms the sale, and, as it does this, there can be no cause of action against the officer who made the sale, even if it be conceded that he did not make a true return. It has been again and again decided that a complaint must proceed on a definite theory, and be good on that theory. *Mescall* v. *Tully,* 91 Ind. 96; *First National Bank* v. *Root,* 107 Ind. 224; *Louisville, etc., R. W. Co.* v. *Thompson,* 107 Ind. 442; *Rahm* v. *Deig,* 121 Ind. 283. The only theory upon which this complaint can be good, if, indeed, it can possibly be good on any, is that it shows a right to redeem from a sale made by a sheriff, and upon that theory it is legally impossible that it can be good against the officer by whom the sale was made. The demurrer filed by Hawkins must be sustained.

The second paragraph of the answer of the appellant Horn is a partial one, and is addressed to so much of the complaint as charges him with the rent of the property of which he was in possession prior to the sheriff's sale. This answer alleges that the appellant made permanent improvements, of the value of fifteen hundred dollars, for which he asks credit.

Upon the assumption which we provisionally make, that the complaint was good, the answer was clearly bad. A mortgagee in possession can not embarrass the right to redeem by making improvements. He may make repairs, but he can not make improvements at the expense of redemptioners. *Miller* v. *Curry,* 124 Ind. 48.

The special finding states the facts substantially as follows: On the 7th of May, 1886, Eber Teter and George Teter were the owners, as partners, of four acres of land. Situated on this land, and attached to it were a heading fac-

tory and appurtenances.  On the day named a suit was pend-
ing in the Hamilton Circuit Court, wherein James R. Carson
and Benjamin F. Horn were plaintiffs and the Teters, the
appellee and others, were defendants, and in that suit a de-
cree of foreclosure was rendered, in which judgments were
embodied.   Carson recovered $2,935.80, Horn $10,889.20,
and the appellee $5,088.63.   In June, 1883, and prior to
that time, the Teters were partners, doing business under
the name of Teter & Bro.; their business was that of man-
ufacturing barrel headings, and they were the owners of a
factory properly equipped for that business.   The land on
which the factory was situated was purchased by the firm of
Teter & Bro., but the title was taken in the name of George
Teter, trustee.   On the 29th day of June, 1883, Teter &
Bro. executed a chattel mortgage to James R. Carson on the
partnership property, in which the property was designated
" as the following personal property :  One slack barrel head-
ing factory, consisting of boiler, engine, two planers, two
jointers, two heading turners, four saw rigs, two thousand
feet of inch gas pipes and connections, and all other property
or incidents connected therewith, including pulleys, belts,
tanks, etc., now located on part of lot numbered four of Coles
and Jones' addition to the town of Cicero, Hamilton county,
Indiana."   This chattel mortgage was executed to secure
and indemnify the mortgagee against loss as surety upon a
promissory note executed by Teter & Bro. for five thousand
dollars, and it was provided in the mortgage that the mort-
gagors might remove the heading factory to the four acres
of ground situated in the town of Sheridan.   This mortgage
was duly recorded.   During the latter part of the summer
of 1883 the factory and appurtenances were removed to
Sheridan, and attached to the four-acre tract of land.   Be-
fore the removal of the factory to Sheridan, Teter & Bro.
became indebted to Horn in the sum of five thousand dol-
lars, and to secure this indebtedness, and also to secure ad-
vances that might subsequently be made by Horn, the firm

of Teter & Bro., and the trustee, George Teter, executed to him, on the 24th day of October, 1883, a mortgage on the property in Sheridan. This mortgage, after describing the land, recited that "And this sale includes all machinery, pipes and appurtenances connected therewith on said real estate." It was also declared in the mortgage that it was subject to the mortgage of James R. Carson. The mortgage to Horn was recorded on the 25th day of October, 1883. On the 20th day of November, 1883, Teter & Bro. and their trustee executed a conveyance to Carson, in terms granting all the property to him but which, by agreement, was in fact a mortgage to secure his claim. On the 17th day of August, 1884, Teter & Bro. were indebted to Horn in the sum of $9,720.58, to Carson in the sum of $2,500, and to Smith & Rodeman in the sum of $1,200. On that day these parties agreed that Horn should have a first lien for his claim on the land, that the lien of Carson and Horn should be of the same rank upon the factory and appurtenances, and that Horn and Smith & Rodeman should take possession and operate the factory, that they should pay the expense of the business, and out of the net earnings pay one-half to Horn, one-fourth to Carson, and the remaining one-fourth to Smith & Rodeman. This agreement was recorded on the 18th day of August, 1884. On the 28th day of November, 1884, Teter & Bro. executed to the appellee a mortgage on the property in Sheridan to secure an indebtedness of $4,900, and this mortgage was seasonably recorded. On that day the appellee entered into an agreement with the other interested parties similar to that entered into between the mortgagors and their creditors on the 17th of August, in so far as concerned the operation of the factory and the division of profits, but stipulating that Smith & Rodeman should operate the mill and conduct the business. The factory was operated by Smith & Rodeman until October, 1885, but no profits were realized. In that month Horn, with the consent of the interested parties other than the appellee, took

possession of the property. The use of the property during the time Horn held possession was of the value of one thousand dollars. In May, 1886, a decree was rendered upon the several mortgages and agreements in a suit wherein the mortgagors and all of the mortgagees were parties. The mortgages and agreements "were," as the special finding expresses it, " adjusted and merged in said judgment and decree save and except the question of the use and possession; and the question of repairs made by Horn after October 20th, 1885," which matters were left by the court for future consideration. The decree states the amount which each of the lien-holders was entitled to recover, and adjudges a recovery. It also fixes the order of priority, directs a sale, and provides the method of distributing the avails of the sale. The clerk issued a certified copy of the decree to the sheriff, he advertised the property for sale, describing in the notice the land by metes and bounds, and adding to such description the following : " Including the heading factory and all appurtenances connected therewith ; also the buildings thereon situate, together with all machinery, located at Sheridan, Indiana, formerly known as the ' Teters' Heading Factory.' " The appellee gave notice to Horn and to the sheriff that the property should not be sold separately, and directed that it should all be sold as real estate. On the 3d day of July, 1886, the sale was made. In making the sale the sheriff sold the land separately to Horn, who bid for it two thousand dollars, and the heading factory and equipments he also sold to Horn for the sum of four thousand dollars, that being the amount bid by him. Horn has removed part of the machinery from the State, and the part so removed is of the value of nine thousand dollars. The Teters are insolvent, and unless the appellee can make its claim out of the property it will be lost. The court stated as conclusions of law: " 1st. That the law is with the plaintiff. 2d. That the plaintiff ought to have judgment against Benjamin

F. Horn and Elihu Hawkins for one-half of the value of the property."

It can not be successfully denied that the factory and its equipments were treated by all the interested parties as personal property long prior to the time the appellee's mortgage was executed. It was so characterized in the chattel mortgage to Carson, in which the right to remove it from the town of Cicero to Sheridan was provided for, and so it was treated in the agreements made between the parties prior in equity and in time to the appellee. The agreement between the appellee and the senior lien-holders recognizes the validity of the former agreements and mortgages, so that the parties by their own acts had impressed upon the factory and its equipments the character of personal property. *Ford v. Cobb*, 20 N. Y. 344. It was entirely competent for them to do this, for a factory and its equipments, or a mill and its machinery, may be personal property although it is affixed to the soil. *Malott v. Price*, 109 Ind. 22; *Rogers v. Cox*, 96 Ind. 157, and cases cited (49 Am. Rep. 152). Whether property is real or personal is, as the modern decisions unite in declaring, in a great measure a question of intention. *Hubbell v. East Cambridge, etc., Savings Bank Co.*, 132 Mass. 447 (42 Am. Rep. 446, and the authorities in the note to page 447). In this instance the intention to fix upon the heading factory and its equipments the character of personalty had been fully and unequivocally manifested, and notice lawfully given before the appellee acquired any rights in the property. We are not, therefore, dealing with a case where a purchase is made, or a mortgage accepted, where there is no notice of the character of the property, and appearances indicate that it is part of the realty. We make no inquiry as to what rights a mortgagee acquires where his lien is taken upon the faith that the property is land, and there is neither actual nor constructive notice that the parties have by their conduct impressed upon the property a different character.

As the factory and its equipments were originally personal

property that character they retained, unless it be true that the decree in the foreclosure suit transformed it into property of another kind.   The case is, so far as concerns this point, controlled by the decree.   If the decree does, as appellee's counsel contend, adjudge that the property is real and not personal, the appellants are estopped to treat it as personalty.   There is no direct adjudication upon this question, for there is no express decretal order that the mill and its equipments are either real or personal property, nor does it appear that the pleadings directly presented that question for decision.   So far as we can judge from the special findings the parties simply sued to foreclose their respective liens, and the only questions which necessarily arise on pleadings demanding a foreclosure are as to the right to a foreclosure, the priority of equities and the distribution of the proceeds. It would no doubt have been within the power of the court to adjudicate upon the question of the character of the property, as an incident of the suit, had that question been directly made, but the question was not directly made and there is no express adjudication.   We must, therefore, ascertain whether there is such an inferential or indirect decision of the question of the character of the property as concludes the parties.   The appellee's counsel assert that the material part of the decree is this :

"It is therefore considered, ordered, and adjudged by the court, that the plaintiff, Benjamin F. Horn, recover the sum of $10,889 ; and that the plaintiff, James R. Carson, recover the sum of $2,935.80 ; and also that there is due said Smith & Rodeman $1,320; and that said Indianapolis National Bank recover the sum of $5,088.13.   It is further adjudged and decreed by the said court that said mortgage set out in the complaint in favor of said plaintiffs, and also the mortgage in the cross-complaint in favor of said bank should be foreclosed, and that the equity of redemption of said defendants, and each of them in and to said property, and all other persons claiming through and under them, or either

of them, in and to said property be, and the same is hereby barred and forever foreclosed.

" And it is further ordered and adjudged by said court that said property, or so much thereof as may be necessary for that purpose, shall be sold by the sheriff of said county of Hamilton, as other property is sold on execution issued upon judgment at law, after duly advertising the same."

This decretal order does not direct that the property shall be sold as land, or real property, but it simply directs that it shall be sold as property, so that it can not be inferred from the description of the thing directed to be sold whether it is that species of property within the class denominated chattels, or within the class denominated lands, for the generic term employed includes both species. The order does, it is true, bar the equities of the parties, but such an order would be appropriate if only personal property were involved; here, however, both classes of property were involved, for at the time the decree was entered the factory and machinery were undoubtedly personal property. For this reason it can not be justly said that the provision barring the equity of redemption is conclusive as to the character of the property ordered to be sold. We can not hold that there is such an adjudication as concludes the parties from showing the truth, for the general rule is that decrees relied upon as creating an estoppel are to be construed with strictness, and certainly this general rule should apply here, for the equities are strongly with the senior lien-holder, and prior to the decree the factory and its equipments were certainly treated as personal property. It ought, in good conscience, to apply, because a sworn officer gave a construction to the decree and insisted upon selling the factory and equipments as personal property, and the senior mortgagee could not do otherwise than buy at the sale without suffering delay, and, probably, serious loss. If the appellee was not satisfied with the construction of the decree given by the sheriff it ought to have applied to the court for relief, and not have

delayed until the senior lien-holder had purchased and taken possession of the property.

It is difficult to perceive how it can be possible for the appellee to affirm the sale by offering to redeem, and yet insist upon its invalidity; but this the appellee does by insisting that the property sold as personal property is, in fact, real estate. If it be true that the factory and equipments were real estate, then the sheriff did wrong in selling them as personal property, and the sale might have been avoided; but this is not what the appellee seeks to do, for it asserts that the sale is valid by offering to redeem. In affirming the validity of the sale it made an election, and made one that necessarily affirms the sale; and thus affirming the validity of the sale the appellee can not be heard to aver that Horn did not buy the mill and its equipments as personal property. He could not, indeed, have bought them as anything else, for they were advertised and sold as personal property. If they are personal property there can, of course, be no redemption. If the sale was invalid the appellee's remedy was by an attack upon the sale itself, and not by a suit to redeem. *Jones* v. *Kokomo, etc., Ass'n,* 77 Ind. 340.

The appellee's equity of redemption was barred by the decree, and the only claim it can with plausibility assert is, that it has a right to redeem under the statute. The only right it has to redeem, if it has any at all, is under the statute, for its general equity of redemption is cut off by the decree. *Eiceman* v. *Finch,* 79 Ind. 511; *Duke* v. *Beeson,* 79 Ind. 24. If the appellee has a right to redeem under the statute now in force, it must be for the reason that it belongs to the class of persons to whom the statute grants the privilege of redeeming, for the right is purely a statutory one and can only be exercised by the persons upon whom the statute confers it. The law as it now stands is clearly laid down in the well-reasoned case of *Hervey* v. *Krost,* 116 Ind. 268. The rule there declared is, that a judgment creditor can not redeem from his own sale. It is there shown that

the decision in *Greene* v. *Doane,* 57 Ind. 186, was of doubtful soundness under former statutes, and that it is entirely without force under the present ones.   We must, therefore, accept as the settled law of this State the rule that a judgment creditor can not redeem from his own sale.

If the sale from which the appellee seeks to redeem was made to satisfy its judgment, it has no statutory right to redeem, so that the pivotal question is whether the sale was made on its own judgment.   It will aid us in our investigation to ascertain the reason for the rule prohibiting a judgment creditor from redeeming from a sale made to satisfy a judgment in his own favor.   The policy of the law is to make the property bring its full value, and to discourage persons from bidding less than the fair value of the property.   It is also the intention of the law to do justice to interested parties, by securing the fair value of the property at one sale, and thus prevent the annoyance and expense of numerous sales, and numerous sales may follow where there are many successive redemptions.  The law was not intended to enable a creditor to offer only part of the fair value of the property and take the chance of a redemption ; neither was it intended that the creditor should permit others to bid much less than the value of the property, and subsequently redeem from the sale.   Nor was it intended that bidders should be discouraged by the uncertainty of acquiring title, and the probability that the owner of the judgment which the property was sold to satisfy might come in and redeem. These are strong reasons supporting the conclusion that a judgment creditor should not be permitted to redeem from a sale made to satisfy his own judgment, and the conclusion is supported by authority.  In *Hervey* v. *Krost, supra,* it was said :   "While the courts favor and give a liberal construction to redemption laws in the interest of the debtor and others who are concerned that the debtor's property shall go towards the payment of his debts, to the full extent of its value, and to whom the right of redemption may be their

only means of protection, it never could have been intended that redemption should afford a rapacious creditor the means of speculating out of the property and upon the necessities of his debtor." The conclusion is supported by the long line of cases which hold that where a sale is made to satisfy two judgments there can be no redemption although both may not be satisfied. *Simpson* v. *Castle*, 52 Cal. 644; *Black* v. *Gerichten*, 58 Cal. 56 ; *People, ex rel.,* v. *Easton*, 2 Wend. 298; *Ex parte Lawrence*, 4 Cow. 417; *Jackson* v. *Bowen*, 7 Cow. 13 ; *People, ex rel.,* v. *Fleming*, 2 N. Y. 484; *Russell* v. *Allen*, 10 Paige, 249; *Clayton* v. *Ellis*, 50 Iowa, 590.

The appellee is clearly within the reason of the rule, and it is within the letter, for the judgment was entered in its favor as well as in favor of the other lien-holders. There was one decree, and it was the decree of all the lien-holders. The decree authorized one sale, and it was the sale of all the judgment creditors. If the property had sold for enough to satisfy the judgment of the appellee, in whole or in part, it could not be doubted that the sale was on its own judgment ; and the fact that it did not sell for enough to satisfy its judgment does not change the principle which governs the case. The decree directed the property to be sold to pay all of the liens, and made provision for distribution to the appellee and all other lien-holders, so that there could only be one sale.

Analogous cases in our reports prove that there was but one judgment and one sale. In *Harrison* v. *Stipp*, 8 Blackf. 455, it was held that where the sheriff had several executions in his hands, and the property was not susceptible of division, there must be but one sale, and this case has often been followed and approved. The decision in the case of *Steamboat Rover* v. *Stiles*, 5 Blackf. 483, is that where liens are filed against a steamboat there can be only one judgment and one sale. It is true that the decision referred to is modified in some respects by the case of *Rose* v. *Mc-*

*Donald,* 23 Ind. 157, but it is not modified upon the point to which it is here cited.

In the case of *Shirk* v. *Wilson,* 13 Ind. 129, it was held that where several claims are filed in attachment proceedings there can be only one sale, although some of the judgments were collectible without relief from appraisement laws, and others were subject to these laws. *Davis* v. *Langsdale,* 41 Ind. 399, is not in conflict with the cases to which we have referred, for in that case the peculiar provisions of the decree prevented a sale on the junior mortgagee's claim until after the claim of the senior mortgagee should be satisfied. *Langsdale* v. *Mills,* 32 Ind. 380. Decisions of other courts come nearer the precise case before us and are, indeed, decisive of the principle which rules the case. In the case of *McCullough* v. *Rose,* 4 Bradw. (Ill.) 149, it was held that where there was an interpleader filed in a suit to foreclose a mechanic's lien, the decree was the decree of all, and that none of the parties to it, in the character of creditors, could redeem from the sale. The case of *Todd* v. *Davey,* 60 Iowa, 532, declares that a mortgagee can not redeem from a sale made upon a decree in his favor, and cites the cases of *Clayton* v. *Ellis, supra, Blake* v. *Black,* 55 Iowa, 252, *Poweshiek County* v. *Dennison,* 36 Iowa, 244, and *Escher* v. *Simmons,* 54 Iowa, 269.

The opinion in the case of *Lauriat* v. *Stratton,* 6 Sawyer, 339, is a strong one, and it is declared that a sale upon a decree foreclosing several mortgages is a sale as to all the lienholders, and that there can be no redemption by any one of them. The court said : " It can not be denied and is admitted, that if the sale was made in pursuance of a decree in favor of Crooke as mortgagee, and upon process to enforce such decree as to his lien as well as that of Swegle, his lien was thereby extinguished." The court cites, in support of its conclusion, the cases of *Shepard* v. *O'Neil,* 4 Barb. 125 ; *Wood* v. *Colvin,* 5 Hill, 228 ; *Ex parte Stevens,* 4 Cow. 133. It is true that in *Lauriat* v. *Stratton, supra,* reference is made to

the statute of Oregon, and it is said that the statute requires the court to adjudicate upon the rights of all the parties to a foreclosure, but this does not weaken the force of the decision as applied to cases under our statute; on the contrary it strengthens it, for it has long been the rule in this State that all rights and equities must be settled in one decree, and that this is one of the leading purposes of our statute. *Woodworth* v. *Zimmerman*, 92 Ind. 349, and cases cited; *Masters* v. *Templeton*, 92 Ind. 447; *Stockwell* v. *State, ex rel.*, 101 Ind. 1; *Bundy* v. *Cunningham*, 107 Ind. 360; *Adair* v. *Mergentheim*, 114 Ind. 303. As the law contemplates a final decree adjusting all rights and equities, and as such a decree was rendered in the foreclosure suit involved in this case, it necessarily results that a sale upon that decree was a sale on all the judgments embodied in it. This being true, it must also be true that none of the claimants in whose favor a judgment was incorporated in the decree of the court can redeem from the sale made on the decree.

The judgment is reversed, with instructions to restate conclusions of law, and render judgment upon the special findings in favor of the appellant Horn, and with the further instruction to sustain the demurrer of appellant Hawkins to the complaint.

Filed Oct. 14, 1890.