CHARLES A. CANNON AND DAVID H. BLAIR, TRUSTEES UNDER THE WILL
OF MARY ELLA CANNON, v. EUGENE T. CANNON, WILLIAM C.
CANNON, NORMA LOUISE CANNON, HARRIETT COLTRANE CAN-
NON, MARIAM CANNON HAYES, CHARLES A. CANNON, JR., MARY
RUTH CANNON, ADELAIDE CANNON BLAIR, JAY B. DOUGLASS,
ADELAIDE DOUGLASS WHITLEY, ALLEN DOUGLASS RUSHTON,
ADELAIDE DOUGLASS RUSHTON, DAVID H. BLAIR, JR., MAR-
GARET CANNON HOWELL, MARGARET CARR HOWELL, CLARK
HOWELL III, WILLIAM BARRETT HOWELL, NANCY CARR DOR-
MAN, JULIAN CARR FRIENDLY, MARGARET FRIENDLY, MARY
ANN CARR SANGER, PAUL WELDON SANGER, JR., JULIAN S.
CARR, MARY CANNON HILL, CHARLES G. HILL, NANCY KENT
HILL, SUSAN HILL WALKER, SUSANNE WALKER, MARY LEORA
WALKER, ELLA CANNON WALKER, JANE HILL SIMPSON, LAURA
CANNON MATTES, JULIAN S. CARR, JR., JAMES CARR, NANCY
DORMAN, ANN CARR SANGER, CHARLES G. HILL, JR., PEGGY
RHEA WHITLEY.

(Filed 15 December, 1943.)

**1. Judgments § 32—**

The doctrine of *res judicata* is that an existing final judgment rendered
upon the merits, without fraud or collusion, by a court of competent juris-
diction, is conclusive of rights, questions and facts in issue, as to the
parties and their privies, in all other actions in the same or any other
judicial tribunal of concurrent jurisdiction.

**2. Same—**

It is a fundamental principle that, in order to support the plea of
*res judicata*, the fact or facts, necessary to support relief in the second
or subsequent action, must have been definitely comprehended in the
issues and judgment in the prior action; or it must have been incumbent,
upon the party relying on such facts, to have pleaded them and caused
them to be put in issue when an opportunity was afforded him so to do.
The doctrine of *res judicata* must be strictly applied.

**3. Judgments § 15—**

A judgment *in rem* binds all the world, but the facts on which it neces-
sarily proceeds are not established against all the world.

**4. Judgments §§ 32, 34, 35—**

Where testatrix, a resident of this State, by a codicil to her will, gave
the residue of her estate to trustees for the benefit of certain persons for
life, with remainders over on contingencies, and on the same day this
codicil was executed, she revoked certain provisions of a trust deed, there-
tofore made by her, disposing of other properties and set up, to take effect
at her death, a dispositive scheme therefor, identical with that contained
in the codicil, for the same persons and upon the same conditions as to
title and succession, the construction placed upon this trust deed by the
courts of another state is not *res judicata* in an action here to construe
the codicil, and there was error in overruling demurrers to pleas setting
up *res judicata* as a defense and in refusing a motion to strike.

CANNON *v.* CANNON.

STACY, C. J., concurring in result.

WINBORNE and DENNY, JJ., join in concurring opinion.

APPEAL by defendants, Laura Cannon Mattes, Ernest R. Alexander, Guardian *ad litem* for minors, and J. Carlyle Rutledge, Guardian *ad litem* for unborn issue, from *Warlick, J.,* at August Term, 1943, of CABARRUS.

This action was brought to have the Court construe the last will and testament of Mary E. Cannon, who died a resident of Cabarrus County, North Carolina, May 4, 1938. The will consists of an original, declared and published 22 June, 1923; a first codicil, made and published 5 January, 1927; and a second codicil, made and published 21 May, 1937. It is the interpretation of the second codicil with which the case is concerned. This codicil revoked substantial provisions of the original will and set up a new scheme of testamentary disposition with respect thereto. After making certain specific bequests, the will, under the second codicil, devised and bequeathed the residue of the decedent's estate to Charles A. Cannon, David H. Blair, and Central Hanover Bank & Trust Company, a New York corporation, as trustees upon specific trusts mentioned below. Subsequently, the Central Hanover Bank & Trust Company declined to qualify, and under the provisions of the will, on 16 September, 1941, plaintiffs Charles A. Cannon and David H. Blair qualified as trustees, and as such are in the present custody and possession of the estate.

The will directs that the trustees take the residuary estate and divide it into five equal shares, set each share apart for the benefit of the beneficiaries named, respectively, and hold and manage the same in trust for them, with power to invest and reinvest; and further provides out of each share an annuity, for the first taker, of 4½% of the value of the share during the lifetime of the annuitant, with remainder over to others upon contingencies which do not concern our immediate inquiry. Since, however, upon failure of sufficient income, the annuity is to be supplemented out of the *corpus,* conflicting interests may appear as between the first takers and the remaindermen.

From the pleadings and by apparent consent of the parties to the controversy, two questions only were posed for answer by the Court: First, what is the accrual date of the annuities established by the will; second, as to which date shall be determined the value of the shares upon which the 4½% annuity is to be computed—the date of the death of the testatrix or the date when the trustees received the trust estate from the executors and divided it into equal shares?

These questions arise out of what is contended to be 'an ambiguity in Section (G) of the will, which reads as follows:

"Whenever an annuity of four and one-half per centum (4½%) of a share or part of the trust estate is granted under the terms and provisions of this my Will, the said percentage shall be that percentage (*i.e.* 4½%) of the principal of the share or part set aside in trust, computed at the market value thereof at the date of the setting aside of said share or part."

Upon this the appellees contend that the several annuities commence upon the death of the testatrix, Mrs. Cannon, and that the shares are to be appraised or valued as of that date for the purpose of computing the annuities.

Prior to 21 May, 1937, Mrs. Cannon had, by deed or trust agreement, set up a revocable trust, in which, for the purposes of the trust, she conveyed a large part of her estate to The Farmers' Loan and Trust Company, a New York corporation, Charles A. Cannon and David H. Blair, as trustees. This instrument is dated 5 August, 1926. Subsequently, The Farmers' Loan and Trust Company became City Bank Farmers Trust Company, which succeeded in the trust. She reserved a life interest in the trust, and the property of which it was composed was turned over to the trustees at that time. On the same day that Mrs. Cannon made the last codicil to her will—that is, on 21 May, 1937— she revoked certain provisions made in the deed of trust, and therein, with respect to the property conveyed in the trust agreement, she set up a dispositive scheme in form and language identical with that contained in the codicil to the will executed the same day, conveying the property in trust for the benefit of the same takers for life and the same remaindermen, and upon the same conditions affecting the title and succession. With respect to the division of the property, the deed of trust provides:

"2. Upon the death of the donor, the Trustees shall divide the principal of the trust estate into five (5) equal shares and shall dispose of each of such equal shares as follows:"

Thereupon follows the provisions for allotment of shares and computation of the annuities upon their value, and the disposition of the property, as above set out. The corresponding provision in the will is as follows:

"FIFTH: All the rest, residue and remainder of my property and estate of whatsoever kind and wheresoever situate, I give, devise and bequeath to my Trustees, hereinafter named, in trust, nevertheless, to hold, manage, control, invest and reinvest the same and to divide the principal thereof into five (5) equal shares and to dispose of each such equal share as follows:"

Thereupon immediately follows instructions as to allotment of shares to the first takers and computation of the several annuities at 4½% of their value. In this connection, also, the provisions of Section (G) of the will and Section (G) of the trust agreement are pertinent. They are identical in language.

Before the beginning of this action, to wit, on 14 March, 1939, the Trustees under this deed of trust began an action in the Supreme Court of New York in Westchester County, New York (this court corresponds to our Superior Court), against certain defendants constituting the beneficiaries under this deed of trust (who, as stated, are substantially the same as the beneficiaries under the will and like situated under the scheme of disposition of the property set apart under that instrument), the purpose of which action was to have the accounts of the Trustees "judicially settled and allowed"; to have the rights, shares and interests of the respective parties in the property of the trust estate determined and defined; and to have any other "questions which may be raised by any of the parties hereto determined."

Personal service in this proceeding was made upon Mrs. Laura Cannon Mattes, and service by notice of publication was made as to other defendants. The case proceeded to final judgment, rendered 15 July, 1941, in which, *inter alia,* it was determined that the date of accrual of the annuities under the trust deed or agreement was 4 May, 1938—the date of death of Mrs. Cannon, the donor; and that for the purpose of computing said annuities, the shares should be valued as of that date. See paragraph XXI of the judgment, R., p. 133.

In the second defense in the answer of E. T. Cannon to the complaint in the present case, the foregoing judgment is pleaded as an estoppel to all parties and as *res judicata,* determining the date at which the annuities under the will accrued and the date as of which the shares must be valued in computing the annuities, adjudicating that both the valuation of the shares and the commencing of the annuities shall be 4 May, 1938, the date of the death of Mrs. Cannon. The same plea was made in the answers or amended answers of William C. Cannon *et al.,* Margaret Howell *et al.,* and other defendants referred to in the opinion.

To all of these pleas, demurrers were made by J. Carlyle Rutledge, guardian *ad litem,* Ernest R. Alexander, guardian *ad litem,* and Laura Cannon Mattes. In addition to demurring to these defenses, Laura Cannon Mattes also moved that the allegations with respect to this judgment and the paragraphs in which they were set up be stricken from the pleadings. Upon the hearing Judge Warlick overruled all the demurrers, and the demurring defendants appealed, assigning error.

*Robinson & Jones* for defendant Laura Cannon Mattes, appellant.

*Ernest R. Alexander,* guardian ad litem for minors, defendant, appellant.

*J. Carlyle Rutledge,* guardian ad litem for unborn issue of all the family, defendant, appellant.

*W. H. Beckerdite* for plaintiff Charles A. Cannon and David H. Blair, Trustees, appellees.

*E. T. Bost, Jr.,* for defendants Eugene T. Cannon, William C. Cannon, Mariam Cannon Hayes, Charles A. Cannon, Jr., Mary Ruth Cannon, appellees.

*J. G. Korner, Jr.,* for defendants Adelaide Cannon Blair, J. B. Douglass, Adelaide Douglass Whitley, David H. Blair, Jr., appellees.

*Ratcliff, Vaughn, Hudson & Ferrell* for defendants Margaret Cannon Howell, Mary Cannon Hill, Charles G. Hill, Susan Hill Walker, Jane Hill Simpson, appellees.

SEAWELL, J. Upon the question presented in the lower court, appellees contend that the annuities commence on the death of the testatrix and that the shares must be valued as of that date for computing such annuities. Of the appellants, Mrs. Laura C. Mattes contends that the annuities commence on the date of the death of Mrs. Cannon, but contends that the valuation of the shares for computation of the annuities must be made on the basis of the market value at the time of the actual division. Other demurring and appealing defendants—the guardian *ad litem* for minor beneficiaries and the guardian *ad litem* for unborn children—have not formally agreed with either of these views, and doubtless when the time comes to answer may insist upon a construction more favorable to the interests they represent; but at present they insist that they should be allowed to present to the court that view of the will which their duty may require, unembarrassed by previous adjudication.

The appellees contend that the identical questions upon which the advice of the court is sought—namely, upon what date the annuities under the will accrue, and as of what date the allotted shares are to be valued for computation of the said annuities—have been judicially determined and settled in the New York proceeding between the same parties and cannot be relitigated. The final judgment in that proceeding is therefore pleaded in bar of the present action. It is with this question alone we are here concerned.

The circumstances under which the doctrine of *res judicata* is invoked are so novel in that connection as to require a brief reference to the conditions requisite to the support of this plea.

A comprehensive statement of the doctrine is found in 30 Am. Jur., Judgments, sec. 161:

"Briefly stated, the doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction."

As the doctrine was originally announced in the English courts, the term "merits" would refer to the "matter directly in question" in the second action, and the issue decided in the first case must be "directly on the point." *Ibid.*, sec. 161. *Johnson Steel Street Rail Co. v. Wharton*, 152 U. S., 252, 38 L. Ed., 429; *Fuquay v. Atl. and Western R. R. Co.*, 199 N. C., 499, 155 S. E., 167; *McElwee v. Blackwell*, 101 N. C., 192, 7 S. E., 893; *Mann v. Mann*, 176 N. C., 353, 97 S. E., 175; *Shuster v. Perkins*, 47 N. C., 217.

Mr. Freeman, in his work on judgments, observes that the only matter essential to making a former judgment on the merits conclusive between the same parties is that the question to be determined in the second action is the same question judicially determined in the first. Freeman on Judgments, Fifth Ed., p. 1418. Elsewhere, he varies the formula by using the word "issue." But both these terms are versatile and inconclusive without reference to the kernel of fact to which they relate. The requirement as to identity of subject matter is satisfied if the issues in the prior action have necessarily determined the facts upon which the right sought to be asserted in the subsequent action depends.

Where the application requires no greater elaboration, it is usually said that there must be an identity of subject matter in the two suits; with a conventional understanding that the use of the doctrinal terms implies the limitations which ordinarily belong to the subject. *Shuster v. Perkins, supra.*

In *Current v. Webb*, 220 N. C., 425, 428, 17 S. E. (2d), 614, cited by appellees, *Justice Devin*, writing the opinion of the Court, refers to the estoppel created by the judicial determination of a fact in the prior action, although not upon identity of subject matter, where that fact is essential to support the right asserted in the subsequent action, quoting from 2 Freeman on Judgments, sec. 670:

"There is no doubt that a final judgment or decree necessarily affirming the existence of any fact is conclusive upon the parties or their privies, whenever the existence of that fact is again in issue between them, not only when the subject matter is the same, but when the point comes incidentally in question in relation to a different matter, in the same or any other court." *Hospital v. Guilford County*, 221 N. C., 308, 20 S. E. (2d), 332; *Harshaw v. Harshaw*, 220 N. C., 145, 16 S. E. (2d),

666; *Leary v. Land Bank,* 215 N. C., 501, 2 S. E. (2d), 570; *Barcliff v. R. R.,* 176 N. C., 39, 96 S. E., 644; *Southerland v. R. R.,* 148 N. C., 442, 62 S. E., 517; *Tait v. West. Md. R. R. Co.,* 289 U. S., 620, 77 L. Ed., 1406.

None of these authorities challenge the fundamental principle that in order to support the plea of *res judicata,* the fact or facts—whether called "subject matter" or otherwise designated—necessary to support relief or recovery in the second or subsequent action must have been definitely comprehended in the issues and judgment in the prior action, and must have been put in issue and judicially determined; or, at least, it must have been incumbent upon the party relying on such facts to have pleaded them and caused them to be put in issue when an opportunity was afforded him to do so in order to render the prior judgment determinative or effective as *res judicata. Bangle v. Webb,* 220 N. C., 423, 17 S. E. (2d), 613; *McMillan v. Teachey,* 167 N. C., 88, 83 S. E., 175.

Certainty with respect to the thing determined is one of the fundamentals of every trial; and when the result of that trial is pleaded as *res judicata* in a subsequent proceeding, it cannot be left to uncertain inference. This is sometimes expressed in the rule that the doctrine of *res judicata* must be strictly applied. *Horn v. Indianapolis Nat. Bank,* 125 Ind., 381, 25 N. E., 558, 30 Am. Jur., 909. The right of a party to litigate his claim will not be defeated by a roving abstraction which does not meet the exigent standard of notice and hearing—his day in court—guaranteed to him by the Constitution. He is entitled to this either at the one time or the other.

We have tried to note the special phases of the doctrine which appellees suggest as applicable to the peculiar circumstances of the case, and have cited the authorities discussing them. But we find the New York proceeding relating to the trust agreement and the present action relating to the will so clearly distinguished, and the matters at issue so essentially different, as to lead us to the conclusion that the plea of *res judicata* or estoppel is not available to the appellees as a defense in this suit.

It is argued that the New York proceeding is an action *in rem.* There is no doubt that in its main features it is of that character. *Cutter v. Trust Co.,* 213 N. C., 686, 197 S. E., 542. If it is wholly of that nature, the effect of the final judgment therein must be confined to the *rem*—and that properly included no more than the administration of that trust and its constituent property. No incidental construction of the trust agreement for the purpose of its administration could have any *in rem* effect on the will or any *in personam* effect on its beneficiaries. Considered within the framework of such a proceeding, a fact found as an inducement to a conclusion with respect to the *rem* would not necessarily

estop a party to another collateral proceeding where the fact is more directly involved, as that would make the judgment *in rem* operate as a judgment *in personam*. *S. ex rel. Gott v. Fidelity & Deposit Co.,* 317 Mo., 1078, 298 S. E., 83, 89 A. L. R., 1102. The annotation quotes *Justice Holmes* in *Becher v. Contoure Laboratories,* 279 U. S., 388, 73 L. Ed., 752, 49 S. Ct., 356: "A judgment *in rem* binds all the world, but the facts on which it necessarily proceeds are not established against all the world."

We come here to serious questions challenging the jurisdiction of the New York Court over most of the beneficiaries under the will because of the lack of personal service, the limitations on the representation of minor beneficiaries and unborn children by the guardians *ad litem* appointed by the New York Court, the fact that the trustees of the testamentary trust were not parties to that action, and the question whether a judgment in such a proceeding, so constituted and heard upon such service, could have any *in personam* effect on the parties against whom the estoppel is pleaded. *Smith v. Gordon,* 204 N. C., 695, 169 S. E., 634; *Stevens v. Cecil,* 214 N. C., 217, 199 S. E., 161; *Pennoyer v. Neff,* 95 U. S., 714, 24 L. Ed., 565; *Boswell's Lessee v. Otis,* 13 L. Ed., 164, 9 How., 336; *Johnson v. Powers,* 139 U. S., 156, 35 L. Ed., 112; *Overby v. Gordon,* 177 U. S., 214, 44 L. Ed., 741; *Thormann v. Frame,* 176 U. S., 350, 44 L. Ed., 500; *Baker v. Baker,* 242 U. S., 394, 61 L. Ed., 386; *McDonald v. Mabee,* 243 U. S., 90, 61 L. Ed., 608. We do not consider a detailed discussion of these matters necessary to a decision of the case. Whatever label we apply to the New York proceeding or to the case at bar, the significant fact is that the suits relate to the construction of different instruments which have no factual or legal interdependence, respecting the present inquiry, and relate to different trusts and different properties. The beneficiaries under the testamentary trust do not derive from the deed setting up the New York trust any right respecting the property bequeathed and devised to them by the will, or to the manner or method of its administration; and *vice versa,* the beneficiaries under the trust deed, although the same persons, acquire no rights respecting that trust from the will.

The properties put into the trust have no relation to each other except that they have a common donor; they are not complementary—the New York proceeding had nothing to do with the residuary property. The property put into the living trust had been separated and turned over long ago, and the death of Mrs. Cannon merely changed the character and object of its possession. The residuary bequest or devise to the annuitants and their successors in title was the residuum of that property of which Mrs. Cannon still retained the power of testamentary disposition—that remaining after nondeferred legacies and bequests were

paid and other obligations of the estate had been satisfied out of the general property, as to which Mrs. Cannon died wholly testate. The instruments have no mutual references that would justify the theory that the one should be determinative of any provision contained in the other, or that might make a legal comparison necessary to the construction.

Wherever the emphasis is placed in the attempt to find a common *res* for the New York proceeding and the case at bar, the theory of the proponents of the estoppel is that the two instruments, concurrently made, and disposing of all Mrs. Cannon's property, must, *ipso facto,* be construed together; and that this draws them both into the court first acquiring jurisdiction and proceeding to the construction of either instrument, no matter for what purpose; that the appellants had an opportunity to present the will upon the question of construction and failed to do so, and are, therefore, estopped. It does not take into consideration the want of interdependence of the two instruments above pointed out, or the circumstances attending the making of the will and setting up the testamentary trust, of which the Court will take judicial notice, which were wanting in the trust agreement, and the further fact that the trust agreement and the will show significant differences in the language employed with respect to the point at issue here. The construction of the trust agreement was incidental to the administration of that trust, and the facts necessary to the construction of the trust agreement were essentially different from those necessary to be determined in construing the will.

If the two instruments had been executed by different persons, it is clear that no question could arise as to the influence of one instrument upon the other, or of any judgment upon the one having any validity by way of estoppel in an action upon the other.

The appellees contend that their plea is adequately based on the following circumstances: The donor of the trust is the same person, Mrs. Mary E. Cannon; the beneficiaries are identical; the properties are part of the same original estate; the scheme of disposition is identical; the instruments (referring to the codicil and the trust deed) were executed the same day; and with respect to the beneficiaries classed as first takers, both took effect on the death of the testator and donor.

Especially, they insist, taking these facts into consideration, it cannot be supposed that Mrs. Cannon could have a difference of intent as to the time of accrual of the several annuities to the first takers, or as to the appraisal of the shares upon which the annuities are to be computed. The New York proceeding should, therefore, be conclusive upon these questions.

We are not satisfied as to the validity of the major premise. If correct, however, it could only be addressed to the construction of the will,

and falls short of establishing that identity of subject matter which the estoppel requires.

Counsel for the appellees contend that the *"res"* to be considered in comparing the two instruments and appraising the effect of the New York judgment is found in the *words* of Mrs. Cannon. If we should concede, notwithstanding the analysis we have tried to make, that the construction of the trust agreement in the New York proceeding could have anything to do with the construction of the will—merely because of a parity of language—we are confronted with other obstacles growing out of a disparity of the language used at the significant points of comparison, and a substantial difference in attending circumstances and of probable internal reference to these where the language is the same; as, for example, in paragraph (G), relating to the division and valuation of the shares, where the same language is employed in both instruments. In neither case, however, is the language significant except by reference to the events it contemplates.

The trust agreement provides:

*"Upon the death of the donor,* the Trustees shall divide the principal of the trust estate into five (5) equal shares and shall dispose of each of such equal shares as follows:" (Italics added.)

The will provides:

"FIFTH: All the rest, residue and remainder of my property and estate of whatsoever kind and wheresoever situate, I give, devise and bequeath to my Trustees, hereinafter named, in trust, nevertheless, to hold, manage, control, invest and reinvest the same and to divide the principal thereof into five (5) equal shares and to dispose of each such equal share as follows:"

Thenceforward, the two instruments are identical in the actual disposition of the property.

It is hard to see how there could be any controversy in the New York Court over the construction of the above language as used in the trust agreement. In its strict grammatical sense, it provides for a division of the property into shares upon the death of the donor, the allotment of those shares, and computation of the annuities at that time. In the will, however, it is only by construction—as to which there are arguments *pro* and *con,* which might engage the court below in the conscientious discharge of its duty—that such a result could be reached. It is arguable that the date as of which the shares should be valued for computation of the annuity was not definitely fixed in the will as the date of the death of the testatrix for the reason that the testatrix was confronted by circumstances different from those surrounding her when she created the living trust—that is, she knew an administration by the executors must necessarily precede the receipt of the property by the testamentary

22—223

trustees and its division into shares—an administration for which the will provides.

Under the will it is certain that before the trustees of the testamentary trust actually receive the residuary property which they are to administer for the beneficiaries, there must be a preceding administration by the executors under the testate laws, with which the trustees have nothing to do. This is not merely formal. Through it nondeferred legacies and bequests must be satisfied, and debts, taxes, costs of administration and other obligations of the estate must be ascertained and paid; and through that administration must be ascertained the actual residuum to be turned over to the trustees. These are matters which it was not incumbent upon the beneficiaries of the trust to bring to the attention of the Court in the New York proceeding, as they were entirely irrelevant to any issuable matter there dealt with, and if presented at all would have developed not an agreement, but a possible repugnance between the two instruments. It follows that paragraph (G) of the will may be construed—if the lower court should so decide—as postponing the valuation of the shares, both as to time and market value, to the time of the actual division by the trustees when the property constituting the trust has actually come into their hands by the terms of the will.

Arguing against this position, appellees refer to the principle announced in *Trust Co. v. Jones,* 210 N. C., 339, 186 S. E., 335, that "the residue is formed at the death of the testator," with the suggestion, as we understand it, that the division of the property must be referred constructively to that date. This expression as used in *Trust Co. v. Jones, supra,* and like cases, merely presents a legal conception of the residual property as distinct from income received during the administration from property used in paying legacies, debts, and costs of administration, which property never became a part of the residuum. The English rule regarded such income as itself a part of the residuum and required it to be added to the *corpus* to go to the beneficiaries according to the scheme of disposition. In *Trust Co. v. Jones, supra,* the Court adopted the Massachusetts rule, which does not permit the addition of such income to the *corpus,* but requires it to be distributed as income. *Old Colony Trust Co. v. Smith,* 266 Mass., 500, 165 N. E., 657.

The mere legal existence of the residual estate at the time of the death of the testatrix, in this constructive form, with legal means of its actual ascertainment in kind, quantity and value, throws little or no light upon the matter at issue on this appeal.

The law made no division into shares of the property in the testamentary trust upon the death of Mrs. Cannon, although the rights of the respective share takers matured at that time and in fixed proportion. The law does not anticipate the administrative provisions of the

will—and the division into shares is distinctly administrative. The references in the will are clearly to an actual division of the property put into the trust. That property is not left in a common pool of indistinguishable assets of which the annuitants take an unidentified part. It is a matter of separating the various items of which the property is composed into specific parcels of equal value, to be allotted to the respective beneficiaries, once for all, and invested and reinvested for the particular beneficiaries in that line of succession. The division itself may, therefore, well demand the exercise of experience, skill, and sound judgment—a circumstance which no doubt determined the selection of the trustees.

While we have discussed the case at some length, in view of the insistence on the part of the appellees that the benefit of the full latitude recognized by the authorities should be given them in the application of the doctrine of *res judicata,* the case really comes down to a rather narrow compass.

Paragraph (G) of the trust agreement refers to a division of the property into shares, taking place within the administration of that trust; paragraph (G) of the will refers to a similar event taking place within the administration of the testamentary trust. We find no necessary implication in either of these instruments that it was contemplated that these events should take place on the same date, and there is no legal necessity that they should—in fact, there is much argument to the contrary. It is difficult, then, to see that there was any fact in issue or determined in the New York proceeding which should estop, or in legal effect does estop the parties seeking a construction of the will in the present action.

The final construction of the will is for the court below. In arguing the case here, and in the briefs, opposing counsel found it necessary to refer freely to the merits of the case upon the construction itself. On account of the nature of the case, we have found it impossible to avoid such references—to some extent—and still point out the disparity between the matter at issue here and that which was determined in the New York proceeding. Where we have done so, it is only for the purpose of settling the question presented to us on the appeal, and it is not intended to prejudice the cause when heard upon the merits or embarrass the court below in its decision.

There was error in overruling the several demurrers of the appealing defendants and in the refusal to strike these defenses from the record. The judgment of the court below is

Reversed.

STACY, C. J., and WINBORNE and DENNY, JJ., concur in the disposition to be made of the plea of *res judicata,* but do not join in the dicta anent the alleged variant dates between the accrual of the annuities and the ascertainment of their value. To debate the question would be to prejudge it in advance of a decision in the court below. The will is not before us for construction.