LAWYERS TITLE INSURANCE CORPORATION, COMMONWEALTH LAND TITLE INSURANCE COMPANY, CLARK'S CREEK ASSOCIATES, L.L.C., AND BRANCH BANK AND TRUST COMPANY, PLAINTIFFS v. ZOGREO, LLC, FOREST AT SWIFT CREEK, LLC, C.C. MANGUM COMPANY, L.L.C., AND DONNIE HARRISON, IN HIS OFFICIAL CAPACITY AS SHERIFF OF WAKE COUNTY, DEFENDANTS[1]

No. COA09-1304

(Filed 16 November 2010)

**1. Declaratory Judgments— security interests in real property—plaintiffs not bound by lien judgments**

The trial court did not err in denying defendants' motion to dismiss and motion for judgment on the pleadings in a declara-

───────────────

1. The order appealed from is captioned "LAWYERS TITLE INSURANCE CORPORATION *et al.*; Plaintiffs, v. ZOGREO, LLC *et al.*; Defendants." However, we elect to include the names of all the parties to the suit in the caption of this opinion.

tory judgment action concerning security interests in certain real property. As plaintiffs were not parties to defendant Bunn's or Mangum's actions to enforce their materialmen's liens, and therefore were not bound by the lien judgments, plaintiffs were free to bring subsequent actions to have the priority of their security interests determined.

**2. Liens— security interests in real property—not impermissible collateral attack against lien judgments**

Plaintiffs' civil action to determine security interests in certain real property did not represent an impermissible collateral attack against valid lien judgments held by defendants Bunn and Mangum because plaintiffs did not seek "nullification" of the Bunn and Mangum judgments, and plaintiffs might have been entitled to the relief requested without those judgments being declared void as between the parties to the lien enforcement actions.

**3. Liens— security interests in real property—lien enforcement action—not determinative of date of first furnishing**

Even if defendant Bunn's and Mangum's lien enforcement actions were "actions *in rem*," the resulting lien judgments did not establish the date of first furnishing upon which the Bunn and Mangum judgments were based as against plaintiffs.

**4. Liens— security interests in real property—date of first furnishing—no issue of material fact**

The trial court did not err in granting partial summary judgment in favor of plaintiffs in a declaratory judgment action concerning security interests in certain real property because no genuine issues of material fact existed with respect to plaintiffs' claims for declaratory relief, including the date of first furnishing.

Appeal by Defendants[2] from judgment entered 8 June 2009 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 12 May 2010.

*Moore & Van Allen PLLC, by David E. Fox and Michael J. Byrne, for Plaintiffs Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company, and Branch Bank and Trust Company.*

---

2. Defendant Donnie Harrison, in his official capacity as Sheriff of Wake County, is not a party to this appeal.

*No brief for Plaintiff Clark's Creek Associates, L.L.C.*

*Lewis & Roberts, PLLC, by James A. Roberts, III, Matthew C. Bouchard, and Brooke N. Albert, for Defendants Zogreo, LLC and Forest at Swift Creek, LLC.*

*Brent E. Wood and Nicholls & Crampton, P.A., by W. Sidney Aldridge, for Defendant C.C. Mangum Company, L.L.C.*

*Erwin and Eleazer, P.A., by L. Holmes Eleazer, Jr. and Fenton T. Erwin, Jr., for American Subcontractors Association of America, Amicus Curiae.*

STEPHENS, Judge.

*I. Pertinent Procedural History of Current Lawsuit*

On 8 December 2008, in Wake County Superior Court, Lawyers Title Insurance Corporation ("Lawyers Title"), Commonwealth Land Title Insurance Company ("Commonwealth"), Clark's Creek Associates, L.L.C. ("Clark's Creek"), and Branch Bank and Trust Company ("BB&T") (collectively, "Plaintiffs"), filed a complaint for declaratory judgment and motions for a temporary restraining order, preliminary injunction, and permanent injunction against Zogreo, LLC ("Zogreo"), Forest at Swift Creek ("Forest"), and C.C. Mangum Company, L.L.C. ("Mangum") (collectively, "Defendants"), as well as Donnie Harrison in his official capacity as Sheriff of Wake County. Plaintiffs sought judgment declaring their security interests in property located in Garner, North Carolina ("Property") to have priority over materialmen's liens perfected by Bunn Construction Company, Inc. ("Bunn")[3] and Mangum, and sought to prevent the sale of the Property by execution sale.

On 19 December 2008, the trial court entered a temporary restraining order preventing Defendants and Sheriff Harrison from pursuing an execution sale of the Property. Plaintiffs filed an amended complaint on 6 January 2009. The parties served cross-motions for summary disposition on 18 March 2009. Specifically, Plaintiffs filed a motion for partial summary judgment; Zogreo and Forest filed a Rule 12(b)(6) motion to dismiss, and in the alternative, a Rule 56 motion for summary judgment; and Mangum filed motions for judgment on the pleadings and for summary judgment. While the parties' cross-motions were pending, Plaintiffs filed a motion to sup-

---

3. On 30 May 2008, Bunn assigned its judgment to Zogreo and Bunn is not a party to this appeal.

plement their motion for partial summary judgment to add an argument based on the doctrine of instantaneous seisin.

The parties' motions came on for hearing on 17 April 2009. On 8 June 2009, the trial court entered an Order and Partial Summary Judgment granting Plaintiffs' motion for partial summary judgment and denying Defendants' motions. The trial court concluded, *inter alia*, that "Defendants' liens and judgments are invalid as to these Plaintiffs[.]" The trial court did not consider the doctrine of instantaneous seisin in its ruling. The trial court's order further provides that "there is no just reason for delay" and that "this matter is Certified for Immediate Appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b)[.]"[4]

From the trial court's order, Defendants appeal. Plaintiffs cross-assign error to the trial court's implicit denial of their motion to add an argument based on the doctrine of instantaneous seisin.

## II. Factual Background and Prior Litigation

The Property, the site of a residential development project referred to as Parkland Grove ("Project"), is divided into three tracts ("Tract 1," "Tract 2," and "Tract 3") and is encumbered by various security interests held by the parties. Specifically, the entire Property is subject to two claims of lien: one filed by Mangum on or about 5 October 2006, and one filed by Bunn on or about 18 December 2006. Additionally, portions of the Property are subject to deeds of trust: one held by BB&T recorded 22 February 2005 ("BB&T DOT"), and the other originally held by Cardinal State Bank ("Cardinal") recorded 29 April 2005 ("Cardinal DOT"). The Cardinal DOT was transferred to Clark's Creek. When BB&T and Cardinal obtained the deeds of trust, each obtained a lender's title insurance policy. Lawyer's Title issued a policy insuring BB&T and Commonwealth issued a policy insuring Cardinal. As Cardinal's assignee, Clark's Creek is insured under the Cardinal policy.

On 8 April 2004, Old Stage Partners, LLC ("Old Stage"), which owned Tract 1 at the time, entered into a contract with Bunn for clearing, grading, and erosion control services for $268,540. On 19

---

4. When an appeal is from an order which disposes of some but not all claims against a party, "the trial court's determination that there is 'no just reason for delay' of appeal, while accorded deference, cannot bind the appellate courts[.]" *Anderson v. Atlantic Cas. Ins. Co.*, 134 N.C. App. 724, 726, 518 S.E.2d 786, 788 (1999) (internal citation omitted). However, we determine that a substantial right would be affected absent immediate appeal of the interlocutory order in this case and, thus, we will address the merits of the appeal.

April 2004, Old Stage entered into another contract with Bunn for sewer main, water main, storm drain, and roadway construction services. After performing some clearing and rough grading, Bunn ceased work on or around 16 June 2004 for non-payment. On 14 October 2004, Bunn filed a claim of lien on Tract 1 in the principal amount of $180,495.24 for "clearing and grading of property[.]" In this claim of lien, Bunn asserted that the date upon which labor or materials were first furnished to the Property ("date of first furnishing") was 5 April 2004 and the date upon which labor or materials were last furnished ("date of final furnishing") to the Property was 16 June 2004.

On 8 December 2004, Bunn filed suit against Old Stage to enforce the claim of lien. In its complaint, Bunn alleged that it had entered into " 'the Grading Contract' " with Old Stage under which Bunn was to perform "grading construction services" for a total price of $268,540. The complaint additionally alleged that Bunn had performed approximately $199,235 worth of grading and erosion services, that Bunn had ceased working on 16 June 2004, and that Old Stage owed Bunn the principal amount of $180,495.84 for labor and materials supplied to the Property.

On 12 January 2005, Old Stage entered into a third contract with Bunn for silt basin/erosion control services for $27,555. This contract was paid in full in cash when the contract was signed.

On 22 February 2005, Trinity Builders, LLC ("Trinity") purchased a controlling interest in Old Stage, and Old Stage conveyed Tract 1 to Trinity. Also on that date, BB&T loaned $975,000 to Trinity and Trinity executed a promissory note in favor of BB&T. BB&T recorded its deed of trust in Tract 1 as security for Trinity's promissory note, and Lawyer's Title issued a lender's policy insuring BB&T. A portion of the proceeds from the BB&T loan were used to pay the debt on which Bunn's claim of lien was based. As a result, Bunn cancelled its claim of lien on 28 February 2005 and dismissed with prejudice its action to enforce the lien on 10 March 2005.

On 25 April 2005, Bunn submitted a contract proposal to Trinity through Avery Bordeaux, who managed the Project for the various owners of the Property. The proposal was for sewer main, water main, storm drain, roadway, construction road, pump station, and force main construction services for $1,813,631. On 29 April 2005, Trinity borrowed $700,000 from Cardinal to purchase Tracts 2 and 3 from Nantex Corporation, thereby completing the aggregation of the tracts referred to in this case as the Property. As part of the transac-

tion, Trinity gave Cardinal a deed of trust on Tracts 2 and 3. Both the deed from Nantex to Trinity and the Cardinal DOT were recorded simultaneously on 29 April 2005.

On 25 May 2005, Avery Bordeaux, acting as Trinity's agent, signed Bunn's 25 April 2005 proposal. The contract, drafted by Bunn, states: "This proposal—contract replaces any others discussed or written in the past[.]"

On 16 September 2005, Mangum and Bunn entered into a written contract whereby Mangum would "furnish all materials and labor and perform all the work required for . . . Parkland Grove[.]" The total contract price was $1,086,545.80.

Bunn and Mangum ceased work on the Property on 29 September 2006 due to non-payment for their services. On 15 October 2006, Mangum filed a claim of lien on all three tracts. The claim of lien asserted a principal amount of $389,438.41, and listed a date of first furnishing of 15 May 2006 and a date of final furnishing of 22 September 2006. On 18 December 2006, Bunn filed a claim of lien on all three tracts. This claim of lien asserted a principal amount of $895,483.86, listed a date of first furnishing of 5 May 2004, and listed a date of final furnishing of 29 September 2006.

On 12 February 2007, Bunn filed suit against Trinity and Old Stage to enforce Bunn's claim of lien. In its complaint, Bunn alleged that "[i]n or about 2005," Bunn entered into a contract "to perform grading construction services." Bunn further alleged that it had "performed approximately $1,123,869.70 worth of grading and erosion services" and was "owed the principal amount of $895,483.86 for labor and materials supplied to the Property." On 2 January 2007, Mangum filed suit against Bunn and Trinity to enforce its claim of lien.

Bunn and Mangum filed motions for summary judgment, which were unopposed by Trinity. On 24 March 2008, the trial court, the Honorable Henry W. Hight, Jr. presiding, granted summary judgment in favor of Mangum ("Mangum Judgment"). The Mangum Judgment declares a lien on the Property, relates the lien back to 5 May 2004 by right of subrogation to Bunn's lien, and orders the sale of the Property to satisfy the judgment. On 29 April 2008, the trial court, the Honorable Orlando F. Hudson, Jr. presiding, granted summary judgment in favor of Bunn ("Bunn Judgment"). The Bunn Judgment declares a lien on the Property, relates the lien back to 5 May 2004, and orders the sale of the Property to satisfy the judgment. On 30 May 2008, Bunn assigned its judgment to Zogreo.

**LAWYERS TITLE INS. CORP. v. ZOGREO, LLC**

[208 N.C. App. 88 (2010)]

On 8 December 2008, Plaintiffs filed the action which is the subject of the present appeal.

### III. Discussion

### A. Issue One

**[1]** Defendants first argue that the trial court erred in denying Defendants' motion to dismiss and motion for judgment on the pleadings because Plaintiffs' civil action represents an impermissible collateral attack against two valid lien judgments. We disagree.

### 1. Standards of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1979). "[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff[s] [are] entitled to no relief under any state of facts which could be proved in support of the claim." *Id.* at 103, 176 S.E.2d at 166 (citation and quotation marks omitted; emphasis omitted). While the concept of notice pleading is liberal in nature, a complaint must nonetheless contain enough information to provide the substantive elements of a legally recognized claim or it may be dismissed under Rule 12(b)(6). *Stanback v. Stanback*, 297 N.C. 181, 204, 254 S.E.2d 611, 626 (1979). Moreover, if a complaint pleads facts which serve to defeat the claim, it should be dismissed. *Sutton*, 277 N.C. at 102, 176 S.E.2d at 166. "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

"Judgment on the pleadings . . . is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Groves v. Community Hous. Corp.*, 144 N.C. App. 79, 87, 548 S.E.2d 535, 540 (2001) (citations and quotation marks omitted). Any party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial[.]" N.C. Gen. Stat. § 1A-1, Rule 12(c) (2009). "[T]he trial court must view the facts and permissible inferences in the light most favorable to the nonmoving party." *Id.* "This Court reviews a trial court's grant of a motion for judgment on the pleadings *de novo.*" *Carpenter v. Carpenter*, 189 N.C. App. 755, 757, 659 S.E.2d 762, 764 (2008).

### 2. Materialmen's Liens

Pursuant to Article 2 of North Carolina's mechanics', laborers', and materialmen's lien statute,

> [a]ny person who performs or furnishes labor or professional design or surveying services or furnishes materials or furnishes rental equipment pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a ["]claim of lien on real property["] on the real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished or equipment rented pursuant to the contract.

N.C. Gen. Stat. § 44A-8 (2009). The primary purpose of the lien statute is "to protect laborers and materialmen who expend their labor and materials upon the buildings of others." *Carolina Bldrs. Corp. v. Howard-Veasey Homes, Inc.*, 72 N.C. App. 224, 233-34, 324 S.E.2d 626, 632 (citation and quotation marks omotted), *disc. rev. denied*, 313 N.C. 597, 330 S.E.2d 606 (1985).

The lien created by N.C. Gen. Stat. § 44A-8 is inchoate until perfected by compliance with N.C. Gen. Stat. §§ 44A-11 and -12, and is lost if the steps required for its perfection are not taken in the manner and within the time prescribed by law. *Frank H. Conner Co. v. Spanish Inns Charlotte, Ltd.*, 294 N.C. 661, 667, 242 S.E.2d 785, 789 (1978). To perfect a lien on real property, a contractor must file a claim of lien in the office of the clerk of the superior court of the county where the labor has been performed or the materials furnished at any time after the maturity of the obligation secured thereby, but not later than 120 days after the last furnishing of labor or materials at the site of the improvement. N.C. Gen. Stat. §§ 44A-11 and -12 (2009).

To enforce the claim of lien, the contractor must bring a lien enforcement action in the superior court within 180 days of the last furnishing of labor or materials at the site of the improvement. N.C. Gen. Stat. § 44A-13 (2009). When a lien is validly perfected, and is subsequently enforced by bringing an action within the statutory period set forth in N.C. Gen. Stat. § 44A-13, "the lien will be held to relate back [to] and become effective from the date of the first furnishing of labor or materials under the contract, and will be deemed perfected as of that time." *Frank H. Conner Co.*, 294 N.C. at 667, 242 S.E.2d at 789.

### 3. Lien Enforcement Action

A lien enforcement action "is designed to enforce the lien by the sale of whatever interest the person who caused the building to be erected or repaired had in the land improved by the labor or materials of the contractor at the time the lien attached." *Equitable Life Assurance Soc. v. Basnight*, 234 N.C. 347, 353, 67 S.E.2d 390, 395 (1951).

> [T]he action to enforce the lien is not created to determine the validity or the priority of the adverse claims of third persons in the premises subject to the lien. The contractor can obtain the complete relief sought, *i.e.*, the sale of the interest owned by the person who caused the improvement to be made at the time the lien attached, in his action against the landowner, without having the rights of adverse claimants ascertained and settled.

*Id.* Thus, "[o]nly the owner of the property subject to the materialmen's lien is required to be a party to an action to enforce the claim of lien." *Miller v. Lemon Tree Inn, Inc.*, 32 N.C. App. 524, 527, 233 S.E.2d 69, 72 (1977). Although "subsequent encumbrancers and other adverse claimants are *proper* parties to such action, for they have ascertainable interests in the subject matter of the controversy[,]" *Equitable Life Assurance Soc.*, 234 N.C. at 353, 67 S.E.2d at 395 (emphasis added), "subsequent encumbrancers and other adverse claimants are not *necessary* parties to an action to enforce a contractor's lien." *Id.* (emphasis added).

"[I]t is axiomatic that a judgment cannot be binding upon persons who were not party or privy to an action." *Miller*, 32 N.C. App. at 527, 233 S.E.2d at 72. Thus, subsequent encumbrancers and other adverse claimants who are not made proper parties to an action to enforce a lien are not bound by the lien judgment. *Equitable Life Assurance Soc.*, 234 N.C. at 353, 67 S.E.2d at 395 ("If a subsequent encumbrancer is not joined, he is not bound by the judgment in the action between the contractor and the owner . . . ."). Accordingly, an adverse claimant who has not been made a party to a lien enforcement action may bring a subsequent action to determine the priority of its interest in the property. *See Metropolitan Life Ins. Co. v. Rowell*, 115 N.C. App. 152, 444 S.E.2d 231 (1994) (beneficiary of a deed of trust brought an action challenging the priority of the supplier's lien that had been reduced to judgment); *Miller*, 32 N.C. App. 524, 233 S.E.2d 69 (plaintiff holder and beneficiary of deed of trust brought suit against lienor-judgment creditor to foreclose under a judicial sale and alleged plaintiff's deed of trust had priority over defendant's judgment lien in the proceeds from

the judicial sale); *Priddy v. Kernersville Lumber Co.*, 258 N.C. 653, 129 S.E.2d 256 (1963) (holder of deed of trust brought declaratory judgment action against lienor-judgment creditor to determine priority of liens after property offered for sale under execution).

In this case, Plaintiffs were not parties to Bunn's or Mangum's actions to enforce their materialmen's liens. Therefore, Plaintiffs were not bound by the lien judgments and were free to bring subsequent actions to have the priority of their security interests determined as against the lien judgments. *See Miller*, 32 N.C. App. at 527-28, 233 S.E.2d at 72 ("Plaintiffs were not parties to the action by defendant [] to enforce its materialmen's lien. Therefore, they were free to challenge the default judgment purporting to enforce [defendant's] lien in this action to foreclose their deed of trust in order to have the priority of the liens determined."). Accordingly, the trial court did not err in denying Defendants' motion to dismiss and motion for judgment on the pleadings.

### 4. Collateral Attack

[2] Defendants argue, however, that Plaintiffs' action "constitutes an impermissible collateral attack on the Bunn and Mangum Judgments" since Plaintiffs seek to nullify the judgments. We disagree.

"A collateral attack is one in which a plaintiff is not entitled to the relief demanded in the complaint unless the judgment in another action is adjudicated invalid." *Clayton v. N. C. State Bar*, 168 N.C. App. 717, 718, 608 S.E.2d 821, 822 (citation and quotation marks omitted), *cert. denied*, 359 N.C. 629, 615 S.E.2d 867 (2005). "A collateral attack on a judicial proceeding is 'an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it.'" *Reg'l Acceptance Corp. v. Old Republic Sur. Co.*, 156 N.C. App. 680, 682, 577 S.E.2d 391, 392 (2003) (citation omitted). Generally, "North Carolina does not allow collateral attacks on judgments." *Id.* However, "[a] judgment which is void, as opposed to being merely voidable or irregular, may be attacked at any time by anyone whose interests are adversely affected by it." *Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 699, 239 S.E.2d 566, 572 (1977).

In this case, the priority of Plaintiffs' security interests in the Property can be ascertained with respect to Bunn's and Mangum's liens without declaring the Bunn and Mangum Judgments invalid. While the effective date of the Bunn and Mangum liens, as declared by the trial court, is invalid as to Plaintiffs in this action, the Bunn and

Mangum Judgments remain valid between the parties to the lien enforcement actions. Moreover, the declaratory judgment action brought by Plaintiffs is specifically established by law for the purpose of having the priority of the security interests of the parties determined. *See Rowell*, 115 N.C. App. 152, 444 S.E.2d 231 (1994) (beneficiary of a deed of trust brought an action challenging the priority of the supplier's lien that had been reduced to judgment).

Defendants nonetheless contend that because Plaintiffs "have failed to plead or prove that the Bunn and Mangum Judgments are void[,]" Plaintiffs' "attempt to destroy the Bunn and Mangum Judgments falls outside the scope of a permissible collateral attack." Defendants' argument is misguided.

Plaintiffs need not plead or prove that the Bunn and Mangum Judgments are void in order for the priority of Plaintiffs' security interests in the Property to be ascertained with respect to Bunn's and Mangum's liens. Thus, Plaintiffs' declaratory judgment action is not a collateral attack on the Judgments but, rather, is a permissible method of having the priority of the security interests of the parties determined while leaving the Judgments intact as between the parties to the lien enforcement actions.

Accordingly, as Plaintiffs do not seek "nullification" of the Bunn and Mangum Judgments, and Plaintiffs may be entitled to the relief requested without those Judgments being declared void as between the parties to the lien enforcement actions, Plaintiffs' action in this case does not constitute an impermissible collateral attack on the Bunn and Mangum Judgments. Defendants' argument is thus overruled.

*5. Action in Rem*

[3] Nonetheless, Defendants further argue that because Bunn's and Mangum's lien enforcement actions were "actions *in rem*," the resulting lien judgments established the validity of the liens, including the date of first furnishing, "as against the entire world." Again, we disagree.

Our Supreme Court has noted that a proceeding to enforce a mechanic's lien is *in rem. Vick v. Flournoy*, 147 N.C. 209, 212, 60 S.E. 978, 979 (1908); *Bernhardt v. Brown*, 118 N.C. 700, 706, 24 S.E. 527, 528 (1896).[5] A judgment *in rem* binds the world to any decision

---

5. Although we question whether a lien enforcement action is *in rem* or *quasi in rem*, we need not make such determination as the date of first furnishing stated in the lien judgments at issue is *not* binding on Plaintiffs regardless of whether such action is *in rem* or *quasi in rem*.

affecting the *res* involved in the litigation. *Cole v. Hughes*, 114 N.C. App. 424, 427, 442 S.E.2d 86, 88, *disc. review denied*, 336 N.C. 778, 447 S.E.2d 418 (1994). In this way, property rights may be determined with great certainty, allowing the owners of the property interests to use the property more efficiently, or to transfer their interests more easily. *Branca v. Security Ben. Life Ins. Co.*, 773 F.2d 1158, 1162 (11th Cir. Fla. 1985). A proceeding to enforce a mechanic's lien, and the resulting judgment, determines the contractor's lien on the property at issue and orders the sale of the property.

In this case, we do not adjudicate any property rights already determined in the lien enforcement actions or order the sale of the Property to satisfy a judgment, but consider the fact of the date of first furnishing upon which Bunn's and Mangum's claims of lien were based to determine the priority of Plaintiffs' security interests in the Property. "We see no reason why we should allow a judgment *in rem* to establish the facts on which that judgment is based in another suit, and we decline to do so." *Id.* at 1163 (footnote omitted). In *Becher v. Contoure Laboratories, Inc.*, 279 U.S. 388, 73 L. Ed. 752 (1929), a case concerning the validity of a patent, Justice Holmes enunciated this policy by writing for the United States Supreme Court that "[a] judgment *in rem* binds all the world, but the facts on which it necessarily proceeds are not established against all the world." *Id.* at 391, 73 L. Ed. at 754; *accord Cannon v. Cannon*, 223 N.C. 664, 671, 28 S.E.2d 240, 244 (1943).

Accordingly, even if Bunn's and Mangum's lien enforcement actions were "actions *in rem*," the resulting lien judgments did not establish the date of first furnishing upon which the Bunn and Mangum Judgments were based as against Plaintiffs. Defendants' argument is without merit.

### B. Issue Two

[4] Defendants next argue that even if Plaintiffs' challenge to the Bunn and Mangum Judgments was permissible, the trial court erred in granting partial summary judgment in favor of Plaintiffs because genuine issues of material fact exist with respect to Plaintiffs' claims for declaratory relief. We disagree.

### 1. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any mate-

rial fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). Summary judgment is designed to eliminate the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim of a party is exposed. *Hall v. Post*, 85 N.C. App. 610, 613, 355 S.E.2d 819, 822 (1987), *rev'd on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988). "The party moving for summary judgment bears the burden of bringing forth a forecast of evidence which tends to establish that there is no triable issue of material fact." *Inland Constr. Co. v. Cameron Park II, Ltd., LLC*, 181 N.C. App. 573, 576, 640 S.E.2d 415, 418 (2007) (citation and quotation marks omitted).

> When a motion for summary judgment is made and supported as provided in [Rule 56(c)], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

N.C. Gen. Stat. § 1A-1, Rule 56(e) (2009). "On appeal, an order allowing summary judgment is reviewed *de novo*." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004).

### 2. Date of First Furnishing

Under N. C. Gen. Stat. § 44A-8,

> [a]ny person who performs or furnishes labor or professional design or surveying services or furnishes materials or furnishes rental equipment pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a ["]claim of lien on real property["] on the real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished or equipment rented pursuant to the contract.

N.C. Gen. Stat. § 44A-8. "[W]hen a lien is validly perfected, and is subsequently enforced by bringing an action within the statutory period set forth in [N.C. Gen. Stat. §] 44A-13(a), the lien will be held to relate back [to] and become effective from the date of the first furnishing of labor or materials under the contract, and will be deemed perfected as of that time." *Frank H. Conner Co.*, 294 N.C. at 667, 242 S.E.2d at 789; N.C. Gen. Stat. § 44A-10 (2009). Thus, "a contractor's lien for all

labor and materials furnished pursuant to a contract is deemed prior to any liens or encumbrances attaching to the property subsequent to the date of the contractor's first furnishing of labor or materials to the construction site." *Id.*

In this case, Bunn entered into a written contract with Old Stage on 8 April 2004 for clearing, grading, and erosion control services. On 19 April 2004, Bunn entered into another written contract with Old Stage for sewer main, water main, storm drain, and roadway construction services. Bunn performed clearing and rough grading, but ceased work on or around 16 June 2004 for non-payment. On 14 October 2004, Bunn filed a claim of lien in the principal amount of $180,495.24 for "clearing and grading of property[.]" In this claim of lien, Bunn asserted the date of first furnishing to be 5 April 2004.

On 8 December 2004, Bunn filed suit against Old Stage to enforce the claim of lien. Bunn alleged that it had entered into " 'the Grading Contract' " with Old Stage under which Bunn was to perform "grading construction services" for a total price of $268,540, and that Old Stage owed Bunn the principal amount of $180,495.84 for labor and materials supplied to the Property.

On 12 January 2005, Old Stage entered into a third contract with Bunn for silt basin/erosion control services for $27,555. Bunn was paid in full in cash when the contract was signed.

On 22 February 2005, Trinity purchased a controlling interest in Old Stage, and Old Stage conveyed Tract 1 to Trinity. Also on that date, BB&T loaned $975,000 to Trinity. A portion of the proceeds of the BB&T loan was used to pay the debt on which Bunn's 14 October 2004 claim of lien was based, and Bunn then cancelled its claim of lien and dismissed with prejudice its action to enforce the lien.

On 25 April 2005, Bunn submitted a contract proposal to Trinity. This proposal for sewer main, water main, storm drain, roadway, construction road, pump station, and force main construction services contained many of the line items from the 19 April 2004 contract, as well as additional items, for a total contract price of $1,813,631. At deposition, Chad D. Bunn, a Project Manager for Bunn, testified that Bunn was not obligated to do the work it had agreed to do under the first two contracts at the prices stated in those contracts "because [Old Stage] had a breach in their contract. They failed to pay us. So much time had lapsed that material prices had increased and we couldn't do it that cheap. Our prices had to go up." Thus, Bunn would

only agree to continue to work on the Project if Trinity signed the 25 April 2005 proposal reflecting the new prices.

On 25 May 2005, Avery Bordeaux signed Bunn's 25 April 2005 proposal. The contract, drafted by Bunn, states: "This proposal—contract replaces any others discussed or written in the past." Mr. Bunn testified that it was after 25 May 2005 "when [Bunn] came back [to the Project] for a second time[.]"

In an affidavit, Mr. Bunn stated that Bunn submitted invoices to Old Stage/Trinity for all work performed and that Defendants were supposed to pay the invoices upon receipt. Attached as exhibits to Mr. Bunn's affidavit were nine invoices, dated between 8 June 2006 and 27 October 2006 and totaling $1,123,869.70. The first attached invoice, dated 8 June 2006, was for $68,759.85. Mr. Bunn stated that when Trinity began falling behind on invoices, Bunn stopped working on the project on 29 September 2006.

These undisputed facts establish that Bunn was paid in full for its clearing and grading work under the 8 April 2004 contract and was also paid in full, in advance, for its silt basin/erosion control services under the 12 January 2005 contract. Moreover, after Bunn was paid under the 8 April 2004 and 12 January 2005 contracts, and after Old Stage was purchased by Trinity, Bunn submitted a contract proposal to Trinity on 25 April 2005 that, in Bunn's chosen terms, replaced any other contract discussed or written in the past. Trinity executed the contract on 25 May 2005 and Bunn performed the work that is the basis for its second claim of lien under this contract. There was no forecast of evidence that Bunn completed any work pursuant to any contract between 16 June 2004, when it ceased working for non-payment under the grading contract with Old Stage, and 25 May 2005, when it entered into the new contract with Trinity. Accordingly, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue that Bunn first furnished labor and materials under the 25 May 2005 contract on or after that date.

Defendants argue, however, that the dismissal of the Bunn lien enforcement action in 2005 should not have had any effect on Bunn's first date of performance in this case. We agree. Bunn's cancellation of its first claim of lien did not "re-set" Bunn's date of first furnishing for the purposes of this case. Instead, Bunn filed the first claim of lien, cancelled it after receiving payment for the amount asserted in the lien, and thereafter, entered into a *new* contract, under which it

commenced work. It was the commencement of work under a distinctly new contract that effectively "re-set" the date of first furnishing at issue here.[6]

Defendants argue that Mr. Bunn's statement in his affidavit that Bunn's "work on the Project was a part of one agreement and one contract[,]" and Mr. Bordeaux's statement in his affidavit that "Bunn and the owners of the Project had a single contract to provide services that was confirmed under the four proposals" create a genuine issue of material fact regarding the contractual arrangement between Bunn and the project owners. We disagree.

The proposals, drafted by Vick Bunn,[7] were identified as "contracts[.]" The last of the four contracts states that it "replaces any others discussed or written in the past." Bunn performed the work that is the subject of its second claim of lien under this fourth contract. Thus, the plain language of the contracts evidences four separate contracts with the final contract replacing all previous contracts. Moreover, Chad Bunn testified that he was not involved with the formation of any of the contracts entered into between Bunn and Old Stage or Trinity and that he only started to get involved in the "office side of the company . . . probably around 2005." There is no forecast of evidence that Chad Bunn had a basis of knowledge for his opinion that Bunn's work on the project was pursuant to one contract. Furthermore, Mr. Bordeaux testified at deposition that he did not write the above-referenced affidavit, had no memory of signing it, and stated,

> as I recall, is that this was a—would be a series of proposals that I would be receiving, that as we went from one phase of the project to another, I would receive. In other words, I didn't give him a contract for the overall—this was simply a contract for grading or a proposal for grading. The next proposal would have been another phase of the project.

> . . . .

---

6. Had Bunn continued working under one continuous contract, Bunn could have asserted the same date of first furnishing that it asserted in the first claim of lien. However, it could not have asserted the same obligation, *i.e.*, the debt for the work that was the basis for its first claim of lien. *Gaston Grading & Landscaping v. Young*, 116 N.C. App. 719, 721-22, 449 S.E.2d 475, 476-77 (1994).

7. Vick Bunn, Chad Bunn's father, was responsible for entering into the contracts with Old Stage and Trinity on behalf of Bunn and for invoicing. Vick Bunn died on 29 December 2006.

In other words, it would not have been one contract that covered everything in the project, is what I am saying.

. . . .

One master contract, we didn't never [sic] contemplate that.

Thus, Defendant's arguments that there was a material issue concerning the contractual arrangement between Bunn and the owners of the Property are without merit.

The BB&T DOT was recorded 22 February 2005. The Cardinal DOT, which was transferred to Clark's Creek, was recorded 29 April 2005. As these instruments were recorded before 25 May 2005, the BB&T DOT and the Cardinal DOT have priority over Bunn's and Mangum's liens as a matter of law. *Frank H. Conner Co.*, 294 N.C. at 667, 242 S.E.2d at 789. Accordingly, the trial court did not err in granting Plaintiffs summary judgment.

In light of our conclusions above, we need not reach Defendants' remaining argument that there was a genuine issue of material fact as to whether Old Stage and Trinity were "owners" of the Property on 5 May 2004 or Plaintiffs' cross-assignment of error that the trial court improperly denied their motion to add an argument based on the doctrine of instantaneous seisin.

The order of the trial court is

AFFIRMED.

Judges HUNTER and GEER concur.